Brent BRANDON, Appellant,

v.

Gene N. COMBS and The Methodist
Hospital of Kentucky, Inc.,
Appellees.

Court of Appeals of Kentucky.

Oct. 7, 1983.

Discretionary Review Denied and Opinion
Ordered Published by Supreme Court
Feb. 29, 1984.

Bernard Pafunda, Deskins & Pafunda,
Pikeville, for appellant.

William J. Baird, Baird & Baird, P.S.C.,
Pikeville, for appellee Combs.

Henry Stratton, Stratton, May & Hays,
P.S.C., Donald Combs, Pikeville, for appel-
lee Methodist Hosp.

Before DUNN, LESTER and Mc-
DONALD, JJ.

LESTER, Judge.

This is an appeal from findings of fact,
conclusions of law and a judgment of the

Pike Circuit Court which placed a permanent injunction against appellant, Brent Brandon, prohibiting any interference by him with the contractual relationship involving appellees, Gene Combs and The Methodist Hospital.

Both Brandon and Combs are radiologists who practice in the area of Pikeville, Kentucky. By a written contract, dating back to July 1, 1966, Dr. Combs had entered into an agreement with the hospital herein, by which he was to serve as the professional and administrative head of the hospital's department of radiology. Under the terms of the contract, the hospital was to provide the space, equipment and supplies, as well as employ the necessary technical and non-technical personnel. In turn, Combs was to direct the operation of the radiology department so as to meet the needs of the patient to the satisfaction of the medical staff and the hospital. He also had the authority to select, direct and terminate personnel with the mutual consent of the hospital. He was to provide "all radiological services required in the care of charity patients and hospital students." He was to be present to consult with staff physicians in proper cases, during hours to be determined by the hospital. Although appellee could not assign any of his rights under the agreement, his work could be done in part by an associate or assistant, employed by him at his expense, with the hospital's approval. In exchange for these administrative and professional services, Combs was to receive a percentage of the gross collection for services in addition to a monthly salary as administrator.

As per the agreement, Combs employed appellant on June 30, 1977, as a radiologist to assist him, for a trial period of one year at a monthly salary. At the end of the year either party could dissolve the relationship, or if Brandon stayed on, it was agreed that they would become partners on a 50–50 basis. Appellant received full staff privileges at Methodist Hospital, and did perform routine and diagnostic radiological services for that institution, using its facilities there according to the contract between Combs and the hospital. In March, 1978, Combs notified Brandon that their association would terminate at the end of the one-year trial period, June 30, 1978. However, prior to receipt of that notification, Dr. Brandon had informed the hospital administrator, other physicians and insurance companies providing coverage in the area that after July 1, 1978, he would be performing radiologic services in the Methodist Hospital radiology department on an independent basis.

Appellee Combs filed suit on June 26, 1978, claiming an exclusive right under his contract with appellee hospital to use its facilities and to thus provide all radiological services required there. It was further contended that appellant's intended use of those facilities and equipment would cause immediate, great and irreparable harm to Combs and make it impossible for him to fulfill his obligations under the contract with the hospital. The relief sought was a temporary restraining order and a permanent injunction against Brandon from interfering with Combs' right to sole and exclusive use of the radiological facilities, so long as the contract was in effect. A temporary restraining order was entered on the same day.

Appellant responded with a motion to dismiss, an answer and a counterclaim, wherein he alleged that Combs lacked the capacity to maintain the action on the grounds alleged in the complaint, that Combs had no right to deprive him of the use of his staff privileges by virtue of the contract, and that to allow Combs to do so would deprive him of his right to pursue his chosen profession and earn a living. Brandon denied any unlawful interference with the relationship between Combs and the hospital, as well as that chaotic conditions would result by his continuing to practice radiology in the hospital. Appellant further denied the exclusivity of appellees' contract. On his original counterclaim, he sought $5,000 compensatory damages and $50,000 punitive damages. Methodist Hospital was permitted to intervene in the lawsuit and sought a declaration of rights pertaining to the contract to use its

facilities. By amendment to his counterclaim, Brandon alleged violation of Kentucky statute KRS 367.175 prohibiting restraint of trade and formation of monopolies.

Subsequent to the filing of this action, but prior to its final resolution, the original contract upon which appellees rely was revised and extended to include a partnership known as Pikeville Radiology, of which Dr. Combs was a partner. This new agreement basically mirrored the previous one, but contained the following language:

1. The Hospital and the Radiologists agree that the Radiologists herein shall provide the sole and only radiological services to the Hospital. The Hospital agrees that the Radiologists shall have the sole and exclusive responsibility to said Hospital to perform any and all radiological services on behalf of said Hospital, which responsibility is accepted by the Radiologists.

The lower court sustained Combs' motion for a temporary injunction. A motion to dissolve that injunction and to grant one in favor of Brandon was overruled. That action was affirmed by an order of this Court, and relief therefrom denied by the Kentucky Supreme Court. Further testimony was taken by the trial court from Combs, Brandon, and the hospital administrator. In addition, the court had before it the revised contract with Radiology Associates.

In its judgment granting a permanent injunction to appellee Combs, the trial court found that by virtue of the original *and the amended* contracts, Combs *and his partners* had the sole and exclusive right and obligation to furnish radiological services to Methodist Hospital, as well as the sole and exclusive right to use the facilities and equipment of the hospital. Furthermore, it found that appellant's threatened use of the facilities and personnel amounted to an unlawful interference with the contractual relationship between the appellee Combs, his partners, and the hospital, which would disrupt the orderly proceedings of the department, and would render it impossible for Combs and his partners to fulfill the terms of their contract. The trial court concluded, as a matter of law, that the closed-staff method of operating the radiology department pursuant to the contracts was valid, reasonable, lawful and practical. In addition, it stated that denial of the use of the facilities was not a violation of appellant's rights under either the Kentucky or U.S. Constitution. In view of the trial court's findings, Brandon's counterclaim was dismissed.

Subsequent to the entry of the final judgment and the filing of a notice of appeal, appellee Gene Combs died and appellant Brandon apparently moved to Virginia. Appellees made a motion to dismiss the appeal since the issues therein were rendered moot by the death of Combs and the movement of appellant to another jurisdiction. Appellant responded by arguing that the injunctive relief granted below ran not only in favor of Dr. Combs, but also in favor of other physicians who were not parties to the action, as well as the hospital. As such, dismissal of the appeal would be inappropriate. The motion to dismiss was passed to this panel to be considered with the merits of the appeal.

The bulk of appellant's issues on appeal concern the nature and effect of the contract between appellee Combs and Methodist Hospital. As already noted, the trial court held the contract to be exclusive and thus supportive of a permanent injunction against appellant. This is a case of first impression in the Commonwealth, a fact which the circuit court herein fully recognized, and thus it relied upon case law from other jurisdictions. We are not bound to follow such case law, but nonetheless, we cannot ignore the logic therein, nor the trend being set thereby.

In general, contracts between a hospital and a physician providing for exclusive medical services have been upheld even against arguments that such exclusive contracts constitute an unreasonable interference with the right of other doctors to practice their profession, that they are invalid as denying a patient the right to

select his own physician, and that the making of such contracts exceed the authority of hospital officials. *See generally*, Annot., 74 A.L.R.3d 1268 (1976). Several cases have dealt specifically with the "contracting out" of radiological services in a hospital.

In *Blank v. Palo Alto-Stanford Hospital*, 234 Cal.App.2d 377, 44 Cal.Rptr. 572 (1965), the contract provided that a certain group of doctors was to have full charge and supervision of the Palo Alto Diagnostic X-ray department, and permitted them to engage assistants at their own expense. It was determined therein that an agreement conferring an exclusive privilege was not per se illegal so long as it was reasonable and justifiable in view of the ends to be accomplished. Some advantages of such a contract were the facilitation of the administration of the department and training of personnel, the promotion of better relationships between the department and the rest of the hospital, the assurance of the immediate availability of radiologists, and the simplification of scheduling of patients.

In *Dattilo v. Tucson General Hospital*, 23 Ariz. 392, 533 P.2d 700 (1975), a contract giving two doctors the right to provide nuclear medicine services necessary for proper patient care was held not to be an unreasonable interference with the practice of medicine by an internist, specializing in nuclear medicine, who had staff privileges at the hospital, nor did such a contract violate state anti-trust laws or common-law prohibitions against restraint of trade. The justification for such an agreement was to be determined by balancing all circumstances, namely, the relative importance to society and the parties of protecting the activities interfered with as against permitting the interference.

An exclusive radiology contract was found not to be inherently against public policy in *Centeno v. Roseville Community Hospital*, 107 Cal.App.3d 62, 167 Cal.Rptr. 183 (1979). Additional advantages to such a contract were promotion of control and standardization of procedures, improved morale of personnel, and enhancement of the use of expensive equipment.

*See also Letsch v. Northern San Diego County Hospital*, 246 Cal.App.2d 673, 55 Cal.Rptr. 118 (1967) (radiology contract); *Adler v. Montefiore Hospital Association*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974) (cardiology contract).

Appellant's contention that the contract herein does not contain language prohibiting another radiologist from using the facilities, and that the issuance of full staff privileges demonstrates the lack of exclusivity are without merit, we believe, in light of the cases cited above. We view the granting of staff privileges and the contracting for specific services as compatible exercises of the authority of a hospital's administration. Appellee Combs testified to incidents which occurred during the short four-day period when both he and Brandon used the hospital facilities, which situations are the very ones exclusive contracts are intended to prevent. We also reject appellant's position that injunctive relief was improper where other remedies, i.e. resort to the by-laws of the medical staff, exist, since calculation of damages for interference with the contract would be next to impossible. In short, we are of the opinion that the evidence herein was sufficient to support the trial court's findings regarding the exclusivity of appellee Combs' original contract with the hospital. The findings in that respect are not clearly erroneous and we shall not disturb them. CR 52.01; *Blank, supra.*

Next, we shall address appellees' motion to dismiss this appeal. Having already determined that the entry of a permanent injunction was proper in order to advance the goals of the contractual relation between Dr. Gene Combs and The Methodist Hospital, we are compelled to agree with appellees that the death of Dr. Combs renders any issues pertaining to his contractual rights moot. This is especially so in light of the provision in the original contract which stated:

EIGHTEENTH: If the hospital should, at any time, cease to exist or *if the Radiologist should become deceased* or incapacitated for an indefinite period of time then *this agreement shall become null, void* and *ineffective.* (emphasis added)

However, we also agree with appellant's statement both on appeal and in his response to the motion to dismiss, that the judgment below, the permanent injunction, was granted in favor of persons who were never parties to this action. Specifically, the trial court extended relief to the group known as Pikeville Radiology, of which appellee Combs was but a partner, on the basis of the revised and extended contract executed subsequent to the filing of this suit. Yet neither Pikeville Radiology nor the individuals therein, save Dr. Combs, were ever joined as parties pursuant to Civil Rule 17.01, requiring prosecution of an action by the real party interest. The real party in interest is the one who is entitled to the benefits of the action upon the successful termination thereof. *Miller v. Paducah Airport Corp.,* Ky., 551 S.W.2d 241 (1977). In the instant case, only Dr. Combs was entitled to the benefits of the permanent injunction. Consequently, we believe the trial court erred in including the partners of Dr. Combs as beneficiaries of this judgment.

So much of the judgment which grants a permanent injunction to the partners of Dr. Combs is reversed. Having determined that the contract between Dr. Combs and the Methodist Hospital was exclusive, and the permanent injunction based thereon proper, the remainder of the judgment is affirmed. This determination is not affected by the death of Dr. Combs, therefore, we find it unnecessary to discuss the merits of the motion to dismiss for the reasons hereinabove stated.

All concur.