**KENTUCKY BAR ASSOCIATION,**
**Movant,**

v.

**Maria T. GEISLER, Respondent.**

**No. 96–SC–704–KB.**

Supreme Court of Kentucky.

Jan. 30, 1997.

### OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association [hereinafter KBA], as a result of charges instigated against respondent, Maria T. Geisler of Louisville, found her guilty of violating SCR 3.130–4.1 by failing to divulge the fact of her client's death to opposing counsel prior to entering into and consummating settlement negotiations. Neither the KBA nor the respondent requested review of this case. However, this Court, on its own motion, elected to review the question of whether the respondent's actions were within the scope of SCR 3.130–4.1.

The critical facts in the present case involve respondent's filing of a civil action on behalf of Milton F. McNealy for injuries he sustained when he was struck by an automobile while walking along a street in Louisville, Kentucky on November 26, 1993. Subsequent to the filing of the initial complaint, defendant's counsel, P. Kevin Ford, filed a notice to take the deposition of McNealy. Respondent contacted Ford and told him that McNealy was physically unable to give a deposition since he was in very poor health. Consequently, the deposition of McNealy was never taken.

McNealy died on January 26, 1995. Shortly thereafter respondent contacted Ford and stated that her client wanted to settle the case and asked him to forward an offer of a settlement. After an exchange of offers and counter-offers, a settlement was reached on February 9, 1995. On February 23, 1995, McNealy's son, Joe, was duly appointed as the administrator of his father's estate. Ford eventually forwarded the settlement documents along with a settlement check to respondent on March 13, 1995. On March 22, 1995, Ford received back the settlement documents which had been executed by Joe. Upon receipt of the signed documents, Ford learned for the first time of McNealy's death. Ford took no further action to bring the

court's attention to the settlement documents that were signed by the Administrator, but instead, sent the agreed order of dismissal to the circuit court which was signed and entered by the court. No appeal was taken.

Thereafter, Ford filed a bar complaint against respondent on May 5, 1995 due to her failure to advise Ford that her client, McNealy, had passed away during the settlement negotiation period of January 26, 1995 through February 9, 1995. The chair of the inquiry tribunal of the KBA charged respondent with violating SCR 3.130–4.1 for failing to divulge the fact of her client's death to opposing counsel prior to entering into and consummating settlement negotiations. After submission to the Board of Governors, the Board determined that respondent was guilty of the charge and recommended to this Court that it issue a private reprimand and a public opinion against an unnamed attorney for the benefit of other members of the KBA.

In its recommendation to this Court, the KBA noted that there is no KBA Ethics Opinion on point with this matter and no Kentucky case law dealing directly with this issue. However, the American Bar Association Standing Committee on Ethics and Professional Responsibility [hereinafter ABA], squarely addressed this issue when it issued Formal Opinion 95–397 entitled, "Duty to Disclose Death of Client."

Deciding that counsel has the duty to disclose the death of her client to opposing counsel and to the court when the counsel next communicates with either, the ABA specifically stated in its opinion:

> When a lawyer's client dies in the midst of the settlement negotiations of a pending lawsuit in which the client was the claimant, the lawyer has a duty to inform opposing counsel and the Court in the lawyer's first communications with either after the lawyer has learned of the fact.

ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 95–397 (1995).

The ABA's opinion further addressed the question of whether an attorney even has authority to act when her client dies. The opinion determined that prior to death, a lawyer acts on behalf of an identified client. *Id.* When the death occurs, however, the lawyer ceases to represent that identified client. *Id.* The ABA maintained that any subsequent communication to opposing counsel with respect to the matter would be the equivalent of a knowing, affirmative misrepresentation should the lawyer fail to disclose the fact that she no longer represents the previously identified client. *Id.*

Basically, the ABA determined that a lawyer must inform her adversary of the death of her client in her first communication with the adversary after she has learned of that fact. *Id.* Likewise, the lawyer must also inform her adversary, in the same communication, that the personal representative, if one has been appointed, of her former client is accepting the outstanding settlement offer. *Id.* Thus, the ABA concluded that a failure to disclose the death of a client is tantamount to making a false statement of material fact within the meaning of Model Rule 4.1(a) (the precursor to our SCR 3.130–4.1). *Id.*

Respondent argues that the ABA's opinion should not apply to her as it was issued on September 18, 1995, many months after the relevant facts in this disciplinary proceeding. She further maintains that ABA Opinion 95–397 is subject to conflicting conclusions and, thus, should not be followed.

Relying on the additional comments to SCR 3.130–4.1, respondent contends that she did have a duty to disclose "facts" or "evidence." Respondent asserts, however, that an attorney is typically not required to affirmatively reveal evidence that is unknown and potentially helpful to the adverse party. Respondent further maintains that McNealy's death had no significant bearing on the ultimate settlement that was achieved, and that Ford did not oppose the settlement even after it was revealed that McNealy was dead. Finally, respondent contends that Ford knew McNealy had been in poor health and that McNealy's death was a matter of public record reported in the daily newspaper. Respondent argues that she felt she had an ethical duty not to volunteer information about her client's passing. Thus, respondent maintains that is was Ford's own fault to have mistakenly believed that McNealy was

alive at the time the settlement was negotiated, because if Ford had wanted to know whether McNealy was dead, all he had to do was ask respondent about it.

Kentucky's SCR 3.130–4.1 specifically provides: "In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person." This Court recently considered the application of that rule in *Mitchell v. Kentucky Bar Assoc.*, Ky., 924 S.W.2d 497 (1996). That case involved a public administrator of an estate who admitted that he had lied to two heirs by falsely stating that an action to determine ownership of some property had been filed, when in fact, no such action had been taken. *Id.* The respondent in *Mitchell*, after offering extensive mitigating evidence, including the fact that the heirs' interest had not been impaired, received a public reprimand. *Id.* at 498.

Moreover, in *Virzi v. Grand Trunk Warehouse & Cold Storage Co.*, 571 F.Supp. 507 (E.D.Mich.1983), the federal district court, relying on Model Rule 4.1 held that a plaintiff's attorney had a duty to disclose the death of her client. The circumstances in that case are strikingly similar to the case at bar in that:

> [H]ere, plaintiff's attorney did not make a false statement regarding the death of the plaintiff. He was never placed in a position to do so because during the two weeks of settlement negotiations defendants' attorney never thought to ask if plaintiff was still alive. Instead, in hopes of inducing settlement, plaintiff's attorney chose not to disclose plaintiff's death.

*Virzi* at 511. Ultimately, the *Virzi* court came down on the side of disclosure stating:

> This Court feels that candor and honesty necessarily require disclosure of such a significant fact as the death of one's client. Opposing counsel does not have to deal with his adversary as he would deal in the marketplace. Standards of ethics require greater honesty, greater candor, and greater disclosure, even though it might not be in the interest of the client or his estate.

*Id.* at 512.

Thus, we hold that the respondent's failure to disclose her client's death to opposing counsel amounted to an affirmative misrepresentation in violation of our SCR 3.130–4.1. While the comments to SCR 3.130–4.1 do indicate that there is no duty to disclose "relevant facts," those same comments go on to state that:

> A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to act.

Consequently, respondent cannot reasonably argue that her failure to reveal this critical piece of information constituted ethical conduct within the framework of SCR 3.130–4.1.

Furthermore, respondent's argument that the burden of correcting the mistaken belief that her client was alive should be placed on Ford, is incorrect. Attorneys in circumstances similar to those at bar operate under a reasonable assumption that the other attorney's client, whether a legal fiction or in actual flesh, actually exists and, consequently, that opposing counsel has authority to act on their behalf. Here, respondent obtained authority to act on the behalf of Joe, the administrator, but not McNealy, once he passed away. Basically, when the offer was made after McNealy's death, respondent had no authority to act on his behalf. Despite this fact, respondent proceeded to settle the case under the guise that she still had the authority to do so on behalf of McNealy. Her letters to Ford clearly imply this. Accordingly, this Court cannot go so far as to say that such conduct was ethical under the circumstances and within SCR 3.130–4.1.

It should be noted, that this Court fails to understand why guidelines are needed for an attorney to understand that when their client dies, they are under an obligation to tell opposing counsel such information. This seems to be a matter of common ethics and just plain sense. However, because attorneys such as respondent cannot discern such matters and require written guidelines so as to figure out their ethical convictions, this Court adopts the ruling of ABA Opinion 95–397.

Thus, upon our careful review of the record, we find that the evidence does not support the recommendation of the KBA and consequently we adopt the following order.

IT IS HEREBY ORDERED:

That respondent, Maria T. Geisler, be, and hereby is, publicly reprimanded for failing to notify her opposing counsel that her client had died during settlement negotiations. The respondent is further ordered to pay the costs of this action pursuant to SCR 3.450.

STEPHENS, C.J., and COOPER, GRAVES, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., dissents and would concur with the recommendation of the Board of Governors by issuing a private reprimand against an unnamed attorney.

ENTERED: January 30, 1997.

/s/ Robert F. Stephens
Chief Justice