Wilford M. HARRIS, Appellant,

v.

Maria B. JACKSON, Individually and as Parent and Guardian of Chadd Tyrese Malik Devine Jackson, Jr., Appellees.

No. 2004–SC–000121–DG.

Supreme Court of Kentucky.

May 18, 2006.

As Modified May 24, 2006.

W. Jonathan Sweeten, Andrew C. Self, Deatherage, Myers, Self & Lackey, Hopkinsville, Counsel for Appellant.

Walter Gregory Harvey, Norman E. Harned, Harned, Bachert & Denton, LLP, Bowling Green, Steven Craig Girsky, Clarksville, TN, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

The Appellant, Wilford M. Harris, deceased, moved for discretionary review of a Court of Appeals decision which reversed a Christian Circuit Court order dismissing the Appellee's action against him for failure to properly revive the action against the Appellant's personal representative within one (1) year of the Appellant's death pursuant to KRS 395.278. We granted discretionary review pursuant to RC 76.20(1).

The issue presented is best phrased by Appellant, "[t]he issue to be decided by the Court is whether the attorney for a de-

ceased defendant has a duty to disclose the death of his client to opposing counsel. In deciding this issue, the Court will answer whether Appellant Wilford Harris, deceased, is estopped from obtaining a dismissal of the claim for failure to timely revive a lawsuit within one year from his death because his attorney did not give notice of the death."

## FACTS

On June 3, 1999, the Appellant Wilford M. Harris (Harris) and Appellee, Maria B. Jackson (Jackson) were involved in an automobile accident in Christian County, Kentucky, wherein Harris rear-ended Jackson. Jackson was pregnant, full term, at the time of the accident. She thereafter delivered the child, Chadd Jackson, Jr., (Chadd), but alleges he suffered serious and permanent disabling injuries as a result of the trauma from the collision.

On March 23, 2000, Jackson, both individually and as Parent and Guardian of the infant, Chadd, filed this action in the Christian Circuit Court, against Harris, alleging personal injury claims both on behalf of her son and herself. Harris was insured by State Automobile Mutual Insurance Company (State Auto), under liability limits of $100,000.00 per person and $300,000.00 per accident. The defense of the claim was assigned to the Honorable W. Douglas Myers (Myers) of Hopkinsville, Kentucky, while the Appellee's plaintiff claim was handled by the Honorable Blaise E. Ferraraccio (Ferraraccio) and Steven C. Girsky (Girsky), both of Clarksville, Tennessee.

The litigation proceeded as would be expected, until May 25, 2001, with various pleadings and motions having been filed, interrogatories mailed and answered, as well as discovery depositions noticed and taken. Harris however, died on May 25, 2001.

At no time after this date, up until the motion to dismiss for lack of revivor was filed, was the Appellee, or her counsel, notified of Harris's death. This notwithstanding, significant activity in the case continued to occur, ostensibly on behalf of Harris (the client), albeit he was deceased.

Harris's State Auto policy, part E(B)(Duties After Accident), provided "a person seeking any coverage must cooperate with us in the investigation, settlement or defense of any claim or suit." Part A(A)(Liability Coverage) of the policy, provided, in pertinent part, "we will pay damages ... for which any 'insurer' becomes legally responsible because of an auto accident.... *We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.* In addition to our limit of liability, *we will pay all defense costs we incur.* Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted." (Emphasis added).

Aside from normal phone and personal conversations, e-mails and correspondence between counsel, the following litigation activities ostensibly occurred on behalf of Harris after his death:

1. The parties scheduled a mediation conference for September 7, 2001. Myers attended as representing Harris, along with Bob Crotinger, State Auto's claims representative. Settlement offers were made by State Auto, however no settlement was reached between the parties.

2. Following the unsuccessful mediation, Jackson's counsel noticed a motion for trial for November 14, 2001. However, Jackson's counsel could not attend and instead, coordinated with Myers for his office *to attend the hearing for all parties.* Jackson's counsel gave him sixty-eight (68) days during the months of January through May of 2002 for which Jackson's

counsel would be available for trial. An attorney from Myers's office did attend and manage the hearing and the matter was set by the Christian Circuit Court for pretrial on June 26, 2002 and trial for August 5–7, 2002. Paragraph three (3) of the Christian Circuit Court's order established that:

Discovery Compliance and witness disclosure shall be accomplished as quickly and efficiently as possible, with utmost good faith expected of counsel. *Discovery/disclosure shall be pursed in a manner that does not delay resolution of the case or cause postponement of the trial. All disclosures anticipated under the civil rules shall be made sufficiently in advance of the pretrial conference to allow meaningful utilization by the other side.* All discovery shall be completed at least ten days prior to the pretrial conference. Failure to file complete, accurate and timely information or failure to participate in discovery/disclosure as set out above may result in sanctions of the type contemplated by CR 37.02. (Emphasis added).

No notice was given at the pretrial conference, either to Jackson, her counsel, or the court, that Harris had died six months earlier.

3. Next on May 3, 2002, Myers served notice of an independent medical examination for Chadd on June 3, 2002, by Dr. Dennis O'Keefe in Bowling Green, Kentucky. The I.M.E. notice, noted the examination would be *"at the expense of defendant Wilford M. Harris."*

4. Then on May 9, 2002, Myers contacted the Kentucky Ethics telephone hotline personnel, per SCR 3.350, seeking advice in regards to his duties of disclosure. He was advised he did not have to take affirmative action adverse to his client, as long as his conduct did not amount to a fraud upon the court.

5. Myers followed the telephone conversation with a letter to the same ethical advisor on May 14, 2002. In this letter, Myers stated:

This letter is in follow-up to our conversation on May 9, 2002. As I indicated to you, I am involved in representing the defendant in this case. In this case, the defendant died approximately eleven months ago. To date, the plaintiff has made no effort to revive the claim. Notice of my client's death was published in the local newspaper. I have done nothing to conceal the death of my client from plaintiff's counsel, nor have I, in any way, misrepresented facts which would lead counsel to believe that he is still alive.

As I indicated to you in our telephone conversation, I am concerned with my ethical responsibilities in this case. While I hate to see another lawyer placed in the difficult position which I think is likely to develop, *I sense that I have a duty to my client, and his estate, to remain silent and permit this case to take a posture where it can be dismissed because the action was not revived.*

I would appreciate any insights that you have with respect to the ethical implications of this situation. (Emphasis added).

The official ethics response was, as follows:

This responds to your letter of May 14, a copy of which is attached.

You ask if you must tell the opposing attorney of the death of your client, so that the opposing attorney may react to deadlines, etc.

It is my opinion that you do not have to take affirmative action adverse to your client. However, I remind you of Rule of Professional Conduct 3.3(a)(2), which forbids your failure to disclose a material fact when disclosure is necessary to

prevent *a fraud upon the tribunal. If you are asked or otherwise required to respond to the court in this matter, you cannot misrepresent, by statement or by silence, that your client is deceased.* (Emphasis added).

6. On May 23, 2003, Myers noticed the deposition of Jackson to be taken at his offices in Hopkinsville, Kentucky on June 20, 2002.

7. Thereafter, and sometime prior to June 3, 2002, Myers, as counsel for Harris, prepared and tendered an agreed order between all counsel, rescheduling the pretrial conference from June 26, 2002 to July 10, 2002.

8. Thereafter on June 10, 2002, Myers filed a Motion to Dismiss on behalf of the "defendant Wilford M. Harris, now deceased, ..." seeking the dismissal of the action based upon the fact that Harris had died on May 25, 2001 and no revivor had been made. Attached to the motion was a copy of Harris's obituary, from Myers's file, which had appeared a year earlier in the local newspaper, The Kentucky New Era. Jackson responded with a Memorandum asking that the defendant be estopped from asserting limitations under KRS 395.278 due to the concealment of the fact of death.

By order entered July 10, 2002, the court dismissed the plaintiff's claims, for failure to revive pursuant to KRS 395.278. To this date, no estate has been opened for Harris, nor has any personal representative been appointed.

### QUESTIONS RELATING TO JURISDICTION

This court can get all tied up in questions and answers regarding the court's jurisdiction in this matter, even to the point of questioning how any counsel could appear and file motions, briefs and a petition for discretionary review for a client that has been deceased for several years. *See Kentucky Bar Ass'n v. Geisler,* 938 S.W.2d 578 (Ky.1997)("When ... death occurs, however, the lawyer ceases to represent that identified client."), *see also, Brantley v. Fallston General Hosp. Inc.,* 333 Md. 507, 636 A.2d 444 (Md.App. 1994)(where counsel's authority to file an appeal terminates upon death of client), *Earls v. Farmers Production Credit Ass'n.,* 763 S.W.2d 694, 695 (Mo.App. 1988)(where the court held the capacity to be party appellant or respondent reposes only in persons in being), and *Fariss v. Lynchburg Foundry,* 769 F.2d 958 (4th Cir.1985)(where attorney's agency to act ceases with the death of client and he has no power to continue or terminate an action on his initiative).

However, as the parties have not made a point of it, neither shall we. *Daniel v. Fourth & Market, Inc.,* 445 S.W.2d 699, 700 (Ky.1968)("We shall also overlook, since no one seems to have made a point of it, the fact that the appeal is prosecuted in the name of [Wilford M. Harris], the decedent, who no longer exists ...."). Although we demand strict adherence to our jurisdictional rules regarding "timeliness" *e.g. Davidson v. Davidson,* 344 S.W.2d 823 (Ky.1961), and "finality of orders," *e.g. Huff v. Wood–Mosaic Corp.,* 454 S.W.2d 705 (Ky.1970)—"[i]n fact, we are required to do so," *Central Adjustment Bureau, Inc. v. Ingram Associates, Inc.,* 622 S.W.2d 681, 683 (Ky.App.1981)—we have not always acted "sua sponte" as to jurisdictional questions regarding defects in parties where, (1) we were otherwise assured that a "real party in interest" was providing appropriate "virtual representation," (2) the matter presented was of importance to reach at the time presented, and (3) the parties did not address the

defect.[1] *Cf., Nationwide Mutual Ins. Co. v. Hatfield,* 122 S.W.3d 36, 45 (Ky.2003) (Cooper, J., dissenting) ("[N]o personal representative has ever entered an appearance on behalf of Mrs. Hatfield's estate, nor was an appeal filed on behalf of her estate. The plurality opinion simply ignores these jurisdictional deficiencies.") (Citations omitted).

In *Combs v. Eversole,* 292 Ky. 135, 166 S.W.2d 280, 281 (Ky.1942), we dismissed the appeal on Appellee's motion, stating "[o]nly the name of the dead man appears as the appellee. Hence, it would be idle to express an opinion on any of the questions sought to be raised, since no one would be bound thereby." However in *Combs,* the matter *had been previously revived* against the deceased heirs and real representatives, but none were named in the appeal. *Combs* involved the validity of a fraudulent conveyance between the particular parties.

In *Turner v. Seale,* 298 Ky. 403, 182 S.W.2d 953 (1944), we also noted, "[o]nly the name of the deceased . . . appears in the statement of appeal . . . . No appellee being before this court, there is no one to be bound by any decision we might make on the questions sought to be raised." The appeal was dismissed on motion. Again, in *Turner,* the matter *had also been properly revived against the Appellee's real representatives*—yet she was not named as an Appellee—her deceased husband was. Again, the subject matter involved a fraudulent conveyance between the particular parties.

Here however, the resolution of the question presented on this appeal affects not only the parties (or their possible successors) and State Auto—but our entire Kentucky bar. Moreover, to date there is still no one to serve for revivor, as no estate, or personal representative, or administrator, has been appointed for Harris.[2]

Years ago, we determined that in tort cases an injured person could not sue the negligent party's insurance company, except in cases of insolvency or bankruptcy. *Cuppy v. General Accident Fire & Life Assurance Corp., Ltd.,* 378 S.W.2d 629, 632 (Ky.1964). We did this knowing the burden of the defense of the cases, and the primary obligor for the claims or damages would be the carrier. But, we made the decision with the further belief, that the fact of insurance coverage was not germaine to the issue of liability or the amount of damages to be paid.[3]

CR 17.01, provides, in pertinent part:

"Every action shall be prosecuted in the name of the real party in interest, but a personal representative . . . may bring an action without joining the party or parties for whose benefit it is prosecuted. Nothing herein, however, shall abrogate or take away an individual's right to sue."

---

1. Appellant did allude to the defect in the parties in a response to Appellee's motion to abate in the Court of Appeals, but only as a counter-point response to arguments made by Appellee for abatement. No motion to dismiss for defective parties has been made.

2. Appointment of administrators by opposing parties with little, no, or inaccurate family information, and with little time remaining, is, itself fraught with danger in limitation questions. *See* KRS 395.390(1), *Cosby v.* *Hays,* 257 S.W.2d 575 (Ky.1953), and *Fentzka's Adm'r v. Warwick Const.,* 162 Ky. 580, 172 S.W. 1060 (1915).

3. However, an emerging "truth in trial" principle questions the fairness of this belief. "At trial, however, [Indiana Insurance] was not identified and the case was presented as if the only parties were the plaintiff, Earle and the defendant, Cobb. Such a trial is fundamentally misleading to the jury . . . ." *Earle v. Cobb,* 156 S.W.3d 257, 259 (Ky.2004).

The real party in interest is one who is entitled to the benefits of the action upon the successful termination thereof. *Stuart v. Richardson*, 407 S.W.2d 716, 717 (Ky.1966); *Brandon v. Combs*, 666 S.W.2d 755, 759 (Ky.App.1983). A real party in interest then, is a person, or entity, which wins, or loses, dependent upon the resolution of the questions. Thus, although not a named party in the action, State Auto, who has the insurance coverage for $200,000.00 of potential damages, along with the obligation of defending the claim, with its attendant costs, is a real party in interest, albeit not a recognized party under our long standing precedent.

In fact, we have to be honest with ourselves and acknowledge that the real party, who defended this case during Harris's life, is the same party that defended this case after his death, and on this appeal—State Auto. We must also acknowledge that State Auto has the same interest in protecting its obligations, or risks, under its policy as did Harris in protecting himself, and as would his estate. "[I]f an appellee dies before submission, the appeal is abated, and a revivor is necessary. It may be otherwise, if there are other appellees surviving who have a real interest and the case may be decided without prejudicing the rights of successors of the deceased party." *Mason v. Anderson*, 242 S.W.2d 1011 (Ky.1951).

> The doctrine of virtual representation is one of long standing, developed as a rule of the common law, and founded upon convenience and necessity. It acknowledges the impracticability, in certain types of proceedings, of making all persons parties who might have a contingent or remote interest in the subject matter. It recognizes that a party joined in a law suit may effectively represent another not so joined, where they have a common interest and the former may be depended upon to present the merits of the controversy which would protect the rights of the latter.

*Carroll v. First Nat. Bank & Trust Co. of Lexington*, 312 Ky. 380, 381, 227 S.W.2d 410 (Ky.1950).

"From the foregoing it appears immaterial whether or not the person virtually represented is living [or in existence]. The determining factor is such identity of interest as to give reasonable assurance that the contingent rights of the absent party will be protected by the person joined in the suit." *Id.* at 411. "[I]t is a rule that one who participates in litigation, and openly and actively assumes and manages its prosecution or defense, although a stranger to it, is concluded by the judgment rendered therein." *Metropolitan Cas. Ins. Co. of New York v. Albritton*, 214 Ky. 16, 282 S.W. 187, 189 (Ky.1926).

> The doctrine under which a person not a party to a suit may be bound by a judgment therein is not strictly res judicata .... It is based upon privity between a party to the original suit and the person who should be bound by the judgment. This privity is in turn founded upon such an identity of interest that the party to the judgment represented the same legal right. The rule is essentially one of justice and fairness ....

*State Farm Mut. Auto. Ins. Co. v. Shelton*, 368 S.W.2d 734, 737 (Ky.1963).

The doctrine of virtual representation, if adequately assured, meets the standards of "due process." *Hansberry v. Lee*, 311 U.S. 32, 43, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940).

Here, State Auto, with its liability coverage, has similar, if not greater expo-

sure than the decedent's estate.[4] It has the duty to defend, and pay the defense's costs, as well as the right to settle as it "consider[s] appropriate." In every sense of the word, State Auto is a "real party in interest" under RC 17.01, except for the protection afforded it from third-party tort claims. *Cf.*, *Cuppy* 378 S.W.2d at 632. Thus, we are assured, as has been demonstrated by the excellent briefs and arguments, that adequate "virtual representation" has been provided.

Moreover, the ultimate issue at hand, as framed by the Appellant's brief, seems to us to be at this time a matter of great import to the counsel of this Commonwealth. "The right to prescribe ... rules as are necessary to qualify, regulate, and control attorneys as officers of the court is a right of self-preservation." *American Ins. Ass'n v. Kentucky Bar Ass'n.*, 917 S.W.2d 568, 571 (Ky.1996), (citing *Ratterman v. Stapleton*, 371 S.W.2d 939, 941 (Ky.1963)).

The dissent however, would have us ignore the interplay of *Cuppy*, as well as, the importance of the ethical issue presented, in favor of deciding the case on an issue neither party has raised. For the reasons indicated, we are not inclined in this instance to act "sua sponte" in regards to relief that was not requested by the parties.

### REVIVOR UNDER KRS 395.278

KRS 395.278 provides, "[a]n application to revive an action in the name of the representative or successor of a plaintiff, or against the representative or successor of a defendant, shall be made within one (1) year after the death of a deceased party." CR 25.01, which acts in conjunction with KRS 395.278, provides, in perti-

nent part: "(1) if a party dies during the defense of an action and the claim is not thereby extinguished, the court, within the period allowed by law, may order substitution of the proper parties. If substitution is not so made the action may be dismissed as to the deceased party." However, "[t]he word 'may,' as it appears in CR 25.01(1) does not allow for discretionary dismissal, but provides for an exception in those instances in which the right to have the action dismissed has been lost, such as by waiver, estoppel, or consent." *Hammons v. Tremco, Inc.*, 887 S.W.2d 336, 338 (Ky.1994)(citing *Snyder v. Snyder*, 769 S.W.2d 70 (Ky.App.1989)); *see also, Daniel*, 445 S.W.2d at 699.

"Within this jurisdiction, it is a well-recognized rule of law that any statute relating to the revivor of an action is a statute of limitation, rather than a statute relating to pleading, practice, or procedure." *Mitchell v. Money*, 602 S.W.2d 687, 688 (Ky.App., 1980). Being of limitations itself, estoppel may, under the appropriate circumstances, operate to bar assertion of a limitations defense, *e.g. Burke v. Blair*, 349 S.W.2d 836, 838 (Ky.1961), *Hazel v. General Motors Corporation*, 863 F.Supp. 435, 439 (W.D.Ky.1994), or toll the running of the statute of limitations during the period of the conduct. *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 915 (Ky.1992).

■ "Although a party may waive its right to raise the defense of lack of jurisdiction over the person ... it is not logical to suggest that such a waiver can confer to a court jurisdiction where none, in fact, existed." *Mitchell*, 602 S.W.2d at 689; *see also, Hammons*, 887 S.W.2d at 338. Estoppel however, unlike waiver, operates

---

4. It may be assumed that the decedent had very little estate since no estate, or personal representative, has ever been opened or ap-

pointed to handle the devolution of any wealth.

differently. *Cf., Hazel,* 863 F.Supp. at 439; *Munday,* 831 S.W.2d at 915.

If the estoppel is operative, then the limitation has not run, or is barred from assertion. In either case, CR 25.01 is then available and, "[t]he motion for substitution may be made by the successors or representatives of the deceased party or by any party, and, together with the notice of hearing, shall be served on the parties as provided in Rule 5, and upon persons not parties as provided in Rule 4 for the service of summons." CR 25.01, not the estoppel, gives jurisdiction over a party's successor. And here, unlike *Mitchell, supra,* initial jurisdiction did attach, but was abated during the limitations period—and if the estoppel is germiane—jurisdiction still exists in abeyance.

The Appellee argues that we interpret KRS 395.278 and CR 25.01 to have an implied requirement of notice of death to trigger the running of the limitation period, so as to be consistent with the Federal rule, FRCP 25(a)(1), and our surrounding sister states, *e.g., Carter v. Burns,* 332 Mo. 1128, 1138–39, 61 S.W.2d 933 (Mo.1933); *Carroll Hardwood Lumber Company v. Stephenson,* 131 W.Va. 784, 51 S.E.2d 313, 315 (W.Va.1949). It has also been said that, "it is equally plain that time does not run against the order to revive until there is some one representing the original defendant, against whom an order of revivor may be had." *Thompson's Adm'r v. Williams,* 86 Ky. 15, 4 S.W. 914, 916 (Ky. 1887). However, we are always reluctant to substantially amend our rules by interpretation, CR 87, and will not do so here.

### DISCLOSURE OF DEATH

 The art of practicing law is building, or defending, a case against the adversary. While we do acknowledge that lawyers do not have a duty, except as otherwise established, to practice the case

for the opposing counsel—this is still an adversarial profession—the esteem of the legal profession requires some disclosures to meet the rules of professional ethics. Thus, "[t]his Court feels that candor and honesty necessarily require disclosure of such a significant fact as the death of one's client.... Standards of ethics require greater honesty, greater candor, and greater disclosure, even though it might not be in the interest of the client or his estate." *Kentucky Bar Association v. Geisler,* 938 S.W.2d 578, 580 (Ky.1997)(citing *Virzi v. Grand Trunk Warehouse & Cold Storage Co.,* 571 F.Supp. 507 (E.D.Mich.1983)).

Moreover, we have specifically dealt with this issue in *Geisler, supra,* and *Gailor v. Alsabi,* 990 S.W.2d 597 (Ky.1999). "When a lawyer's client dies in the midst of the settlement negotiations of a pending lawsuit ... the lawyer has a duty to inform opposing counsel and the Court in the lawyer's first communications with either after the lawyer has learned of the fact." *Geisler,* 938 S.W.2d at 580 (citing ABA Standing Committee on Ethic and Professional Responsibility, Formal Opinion 95–397 (1995)). In *Geisler,* this Court adopted ABA Formal Opinion 95–397 and summarized the rule in its opinion in the following way:

The opinion determined that prior to death, a lawyer acts on behalf of an identified client. When the death occurs, however, the lawyer ceases to represent that identified client. The ABA maintained that any subsequent communication to opposing counsel with respect to the matter would be the equivalent of knowing, affirmative misrepresentation should the lawyer fail to disclose the fact that she no longer represent the previously identified client. Basically the ABA determined that a lawyer must inform her adversary of the death of her

client in her first communication with the adversary after she has learned of that fact.... Thus, the ABA concluded that a failure to disclose the death of a client is tantamount to making a false statement of material fact within the meaning of Model Rule 4.1(a) (the precursor to our SCR 3.130–4.1).

*Id.* at 579. This Court further held, it "fails to understand why guidelines are needed for an attorney to understand that when their client dies, they are under an obligation to tell opposing counsel such information. This seems to be a matter of common ethic and just plain sense." *Id.* at 580.

In this case, Myers did not disclose Harris's death until the period to revive the action against Harris's estate had lapsed. Not only did he fail to disclose, he continued to participate in discussions, negotiations, depositions, and other pretrial activities, even with the court, as if Harris was still alive.

Ultimately he sought the advice of the KBA ethics hotline to clarify his obligation to disclose Harris's death, revealing in a follow-up letter, "[w]hile I hate to see another lawyer placed in the difficult position *which I think is likely to develop,* I sense that I have a duty to my client, and his estate, to remain silent and permit this case to take a posture where it can be dismissed because the action was not revived." This action established two points; (1) Myers realized it was probable that opposing counsel would not pick up on his client's death, and (2) he had, at the time, an ethical question about his own conduct in the matter. Even so, the letter from the KBA ethics advisor unfortunately advised Myers that he did not

have to disclose the death.[5] However, he was reminded that he should take caution to follow Rule 3.3(a)(2), which forbids the failure to disclose a material fact when disclosure is necessary to prevent fraud upon the tribunal whether it be by statement or silence.

Thus the crux of our decision today is that *Geisler* may not be distinguished on the basis it only involved the death of a plaintiff. The settlement made therein was not attacked as fraudulent, compare *Virzi v. Grand Trunk Warehouse and Cold Storage Co.,* 571 F.Supp. 507 (D.C.Mich.1983), and thus it may be assumed the settlement made (though unaware of the death) was fair for the liability and injuries involved. The import of *Geisler* is that disclosure of such an important fact, such as the death of a client, is required. Thus, the analysis of a death's effect may be made by all parties, as well as the court. With as few civil trial days as a court actually has, once you deduct motion days, holidays and days set aside for criminal or family matters, courts are very jealous of wasting trial days on cases that will not be tried. Thus, candor with the court promotes its efficiency as well. And, whatever may be said about the matter—no one can be misled by the disclosure of death.

The death of Harris not only changed the identity of the defendant, it left Myers without a party to represent in the action, as State Auto could not be made a party. If Jackson had known about Harris's death, the procedures she needed to follow to finish the case would have changed. Instead of continued preparation for trial and communications to this effect with Myers, she would have substituted Har-

---

**5.** We note that Myers professionally complied with SCR 3.530(1) and that having done so, SCR 3.530(3) is appropriately applicable. We surmise, however, that the continuing distinc- tion of *Geisler* on the significance of the death of an injured plaintiff is the real root of the problem.

ris's personal representative to proceed correctly with the case, even to the point of having an administrator appointed once appropriate and accurate information to do so could be properly acquired by discovery or court order. We believe she was misled in that respect.

We distinguish *Gailor*, where we held there was no duty to disclose the death of a tortfeasor, as the person failing to disclose in *Gailor* was an insurance claims adjuster, not an attorney. In *Gailor* we noted, "[w]hatever duties the Code of Professional Conduct may impose upon licensed attorneys, it has no relevance to the conduct of laypersons." *Gailor*, 990 S.W.2d at 605. Here, we are dealing with attorneys.

In closing this issue, we do not disparage Myers for his failure to disclose Harris's death, because, although we now put the distinction of *Geisler* to rest and hold he had a duty to disclose, he properly obtained and followed an opinion given to him by the KBA Ethics committee. However, this does not preclude us from considering the effects of estoppel on KRS 395.278 and any personal representative of Harris.

### ESTOPPEL

A party may be estopped from using a statute of limitations defense, if there is "some act or conduct which in point of fact misleads or deceives the plaintiff and obstructs or prevents him from instituting [or protecting] his suit while he may do so." *Gailor*, 990 S.W.2d at 603 (citing, *Munday v. Mayfair Diagnostic Laboratory*, 831 S.W.2d 912, 914 (Ky. 1992)). Although, generally, the exception applies only if there is an affirmative act by the party charged, "[a]n exception to this general rule may be found if a party remains silent when the duty to speak or

disclose is imposed by law." *Gailor* at 603. *Geisler* so established this duty.

"Attorneys in circumstances similar to those at bar operate under a reasonable assumption that the other attorney's client, whether a legal fiction or in actual flesh, *actually exists* and, consequently, that opposing counsel has authority to act on their behalf." *Geisler* 938 S.W.2d at 580. (Emphasis added).

Although Myers did not expressly deny the existence of Harris or affirmatively misrepresent information to the tribunal, his actions over the course of the one year period, as he said "on behalf of my client and his estate" are sufficient to create an estoppel against asserting the statute of limitations as a defense in this case, or in the alternative, its tolling. The estoppel is binding on Harris's estate as a beneficiary of the conduct creating the estoppel, once CR 25.01 is applied in revivor and the abatement is removed. "One volunteering services without an agreement for or [without] expectation of reward may be a servant of the one accepting such services." *Pennsylvania Cas. Co. v. Elkins*, 70 F.Supp. 155, 158 (D.C.Ky.1947). "[O]ne may not stand by and make no objection to a proceeding in court with the anticipation that if it results favorably the benefits will be accepted, but that if it results unfavorably objections will be made." 31 C.J.S. *Estoppel and Waiver* § 136(a)(1996).

### CONCLUSION

For the foregoing reasons, the opinion of the Court of Appeals is affirmed, and the order(s) of the Christian Circuit Court dismissing Jackson's claim and denying revivor are vacated and this matter is remanded to the Christian Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J., and WINTERSHEIMER, J., concur.

GRAVES, J., concurs by separate opinion.

ROACH, J., dissents by separate opinion, with COOPER and JOHNSTONE, JJ., joining that dissent.

Concurring opinion by Justice GRAVES.

I concur with the majority.

However, I write separately to urge abandonment of the legal fiction that insurance companies cannot be named as party defendants in automobile accident cases. Cutting through the fog of rhetoric, State Auto hired Attorney Meyers to file an answer on behalf of Wilford M. Harris. In reality, the attorney represented two entities having the single nature of being a party defendant. Had State Auto initially been made a party defendant along with Harris, this case could have proceeded fairly, expeditiously, and economically as provided by law, thus avoiding the contortions that these facts have generated. *See Earle v. Cobb,* 156 S.W.3d 257 (2005) (concurring opinion by Justice Graves).

Dissenting opinion by Justice ROACH.

Because I do not think we have jurisdiction over the dead, I dissent. The majority opinion tips its "virtual" hand in its first sentence. It states that a dead person has moved for discretionary review. How is this possible? Clearly, it is not. The fact Wilford Harris is dead and no revivor has ever taken place disposes of this case.

After the trial court dismissed Appellees' claims, they took an appeal against Wilford Harris, a dead person. A court cannot have jurisdiction over a decedent, and action against a decedent is a nullity. *See Gailor v. Alsabi,* 990 S.W.2d 597, 600 (Ky.1999) ("[T]he only defendant named in the complaint was deceased. Since the complaint did not name a party defendant over whom the circuit court could acquire jurisdiction, the complaint was a nullity."). This should be the end of the inquiry, period, because it means there was no appellee before the Court of Appeals and there is no appellant before this Court. Appellees were not without recourse. If Appellees wished to toll the limitation period in KRS 395.278, they could have applied to be named the personal representatives of Harris's estate pursuant to KRS 395.040(2) or for the appointment of a public administrator under KRS 395.400. But this was not done. Thus, the Court of Appeals opinion must be vacated because the Court of Appeals never had jurisdiction to hear this case.

I am baffled by the majority's choice of cases to support its opinion since those cases directly demonstrate that the holding as to jurisdiction is wrong. For example, *Turner v. Seale,* 298 Ky. 403, 182 S.W.2d 953 (1944), holds:

> Only the name of the deceased, W.C. Seale, appears in the statement of appeal filed in pursuance of § 739 to the Civil Code of Practice and the name of his real representative, Mary Burns Seale, against whom the action was revived, nowhere appears in the statement of appeal. No appellee being before this court, there is no one to be bound by any decision we might make on the questions sought to be raised. Therefore, the appeal must be dismissed.

*Id.* at 953. Dismissal is necessary for the simple fact that "there is no one bound by any decision we might make" on the matter. *Id.* An earlier case, *Combs v. Eversole,* 292 Ky. 135, 166 S.W.2d 280 (1942), stands for the same enduring principle: "Only the name of the dead man appears as the appellee. Hence, it would be idle to express an opinion on any of the questions sought to be raised, since no one would be

bound thereby." *Id.* at 281. The majority attempts to distinguish *Turner* and *Combs* from the present matter by arguing that in those cases, the action had previously been revived but the appeal had been pursued only in the name of the dead person. This distinction makes no sense, for surely if we would dismiss a case where a personal representative existed but was not named in the notice of appeal, we must also dismiss a case where a personal representative has never even been appointed. This "distinction" actually makes the current matter riper for dismissal since not only was a dead person the named party, there currently exists no party who could have been named.

The majority does cite one case where our predecessor court, when none of the parties raised the issue, chose to "overlook ... the fact that the appeal is prosecuted in the name of ... the decedent, who no longer exists...." *Daniel v. Fourth and Market, Inc.*, 445 S.W.2d 699, 700 (Ky. 1968). The majority fails to note, however, that the Court in *Daniel* nonetheless affirmed the trial court's dismissal of the matter on the ground that the action had not properly been revived. In other words, the decedent (or rather, his estate), still lost the case. In this light, *Daniel* further supports dismissal of this case, and shows why the majority's attempt to distinguish *Turner* and *Combs*—to further wear an already well-worn phrase—makes a distinction without a difference.

Until today, the required procedure, as aptly stated by the Court of Appeals, was crystal clear:

> When read together KRS 395.278 and CR 25.01 require that when a litigant dies, any action pending with respect to him must be revived against that decedent's administration and the administrator must be substituted as the real party in interest before the action can proceed.

*Snyder v. Snyder*, 769 S.W.2d 70, 72 (Ky. App.1989). Failure to comply with this procedure allows only one result: dismissal.

These holdings are consistent with one of the foundations of our law. Courts do not have jurisdiction to issue advisory opinions. As the Chief Justice recently explained in a unanimous decision:

> It is fundamental that a court must have jurisdiction before it has authority to decide a case. Jurisdiction is the ubiquitous procedural threshold through which all cases and controversies must pass prior to having their substance examined. So fundamental is jurisdiction that it is the concept on which first-year law students cut their teeth.

*Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky.2005). If no case or controversy exists, we have no jurisdiction. *See Commonwealth v. Maricle*, 15 S.W.3d 376, 380–81 (Ky.2000) ("Thus, the issue is not an actual case or controversy before this Court; the issue is not ripe for review. To grant the Commonwealth's petition for a mandamus would require the rendition of an advisory opinion, which is beyond the constitutional powers of this Court. *In re Constitutionality of House Bill No. 222.*, 262 Ky. 437, 90 S.W.2d 692, 693 (1936)."); *Justice v. Commonwealth*, 987 S.W.2d 306, 311 (Ky.1998) ("First, it is a settled principle that this Court adjudicates only 'cases' and 'controversies.' "). Because a dead man cannot be a party, there is no case for us to decide.

The majority opinion does not attempt to distinguish these cases. It simply concludes, in what amounts to an admission that the majority opinion is primarily intended to be advisory, that the question presented on appeal affects "our entire Kentucky bar." *Ante* at 302; *see also* ante

at 304 (declining to "act 'sua sponte' " to dismiss since the issue addressed in the parties' briefs (whether counsel must give notification of client's death) "seems to us to be at this time a matter of great import to the counsel of this Commonwealth"). With all due respect, the importance of a matter is irrelevant to the question of jurisdiction. We have held:

> This Court has repeatedly reaffirmed the proposition that it has no jurisdiction to decide issues which do not derive from an actual case or controversy. 30 Ky. Const. § 110, *In re Constitutionality of House Bill No. 222*, 262 Ky. 437, 90 S.W.2d 692 (1936) ("Power to render advisory opinions conflicts with Kentucky Constitution Section 110 and thus cannot be exercised by the Court"). Recently, in *Philpot v. Patton*, Ky., 837 S.W.2d 491, 493 (1992), we reiterated that "[o]ur courts do not function to give advisory opinions, even on important public issues, unless there is an actual case or controversy."

*Commonwealth v. Hughes*, 873 S.W.2d 828, 829–30 (Ky.1994).

The majority opinion further attempts to evade this reasoning by offering as alternative grounds the absurd theory that Harris's insurance carrier, State Auto, is a real party in interest. The majority further reasons—presumably so, since this notion is not explicitly stated in the opinion—that because State Auto has abided by its contractual duty to provide a defense, is a presently existing entity, and is a real party in interest, it has provided "virtual representation" of Harris's estate. This proposition is not supported by the law or the facts of the case. To begin with, State Auto, as the liability insurer, is not a real party in interest. "The generally accepted modern view is that the real party in interest is the party (person) who,

by substantive law, possesses the right sought to be enforced." 6 Kurt A. Phillips, Jr., et al., *Kentucky Practice: Rules of Civil Procedure Annotated*, Rule 17.01 cmt. 2, at 435 (6th ed.2005). This is why our predecessor court held that the liability insurance company of a defendant tortfeasor is not a real party in interest to a lawsuit over the tortfeasor's liability, just as in this case. *See Mayer v. Dickerson*, 321 S.W.2d 56, 58 (Ky.1959) ("Plaintiffs insist that as their insurance carrier was forced to become a party plaintiff to the action, justice demands their motion to make defendants' insurance carrier a party defendant should have been sustained. Plaintiffs overlook the fact that their policy is what is generally known as 'collision' insurance, while defendants' policy covers what is known as 'liability' insurance. Plaintiffs' insurance carrier had incurred liability and paid same, while defendants' insurance carrier would incur no liability until a judgment was rendered against them; therefore, it was not a real party in interest.").

Even assuming the validity of the majority's theory that a liability insurance carrier is a real party in interest, such representation still requires that the real party in interest who provides the virtual representation be a named party. Yet, as even the majority admits, State Auto has never been named as a party. The majority's reliance on *Mason v. Anderson*, 242 S.W.2d 1011 (Ky.1951), and *Carroll v. First Nat. Bank & Trust Co. of Lexington*, 312 Ky. 380, 227 S.W.2d 410 (1950), demonstrate its own faulty reasoning in this regard. In both cases, the Court was faced with *named parties* that survived and were in a position to protect the rights of the deceased. The majority even quotes, then ignores, language demonstrating this requirement. Ante at 303 (quoting *Mason*, which noted that "there are other appellees surviving," 242 S.W.2d

at 1011, and *Carroll,* which noted "a party joined in a law suit may effectively represent another not so joined," 227 S.W.2d at 410, and that "the contingent rights of the absent party will be protected by the person joined in the suit," *id.* at 411).

Ultimately, the majority holds that a deceased person may pursue an appeal and that he may do so by being virtually represented by a "party"—his liability insurance carrier—that neither has been named nor can even be a party (i.e., by being a real party in interest). No amount of virtual reality can make this holding fit within the law. Given the majority's refusal to recognize this leads me to believe that it is only concerned with achieving what it sees as a desirable result—allowing the Appellees to pursue their claim at trial—a result that shall not yield even to Civil Rules, the laws of nature, or our long-standing precedent. I cannot subscribe to such an opinion. Therefore, I dissent.

COOPER and JOHNSTONE, JJ., join this dissenting opinion.