RENDERED: JUNE 24, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1011-MR

DONNA POWERS                                             APPELLANT

v.                  APPEAL FROM MCCRACKEN CIRCUIT COURT
HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 18-CI-00258

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY                             APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Donna Powers and Fendol Carruthers, Jr. were involved in a two-vehicle accident. Powers later filed suit against Carruthers and Kentucky Farm Bureau (Farm Bureau), her underinsurance carrier. However, apparently unbeknownst to Powers, Carruthers had died before Powers filed her complaint. The trial court dismissed the claims against Carruthers as nullities, denied Powers's motion to revive her claims against Carruthers's estate (the Estate) and to

raise new claims, and granted summary judgment to Farm Bureau. After examining the record and applicable law, we affirm.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

In November 2015, Carruthers and Powers were the drivers involved in a two-vehicle accident in which Powers sustained injuries. It is uncontested that at the time of the collision Carruthers was in violation of KRS[1] 189A.010, which makes it a criminal offense to operate a motor vehicle under the influence of intoxicating substances. Carruthers was insured by State Farm Mutual Automobile Insurance Company (State Farm), with a policy limit of $50,000. As Powers alleged damages exceeding that limit, she sought to recover via the underinsured coverage of her Farm Bureau policy.

Carruthers died in March 2016. No formal estate for Carruthers was established prior to the eventual filing of this lawsuit. Powers received her last basic reparations benefit (BRB) payment in August 2016 and she filed this action against Carruthers and Farm Bureau in the McCracken Circuit Court in April 2018, apparently unaware that Carruthers was dead. Though the complaint was filed more than two years after the collision, the Motor Vehicle Reparations Act (MVRA) generally provides that an action under it may be filed within two years

---

[1] Kentucky Revised Statutes.

of the date of the last BRB payment.  *See* KRS 304.39-230(6).  Farm Bureau filed an answer and a cross-claim against Carruthers.

In short, neither the complaint nor Farm Bureau's answer/cross-claim noted that Carruthers had died.  Of course, being deceased, Carruthers did not file an answer to Powers's or Farm Bureau's claims.

The record then is silent until May 2019, when the trial court issued a notice requiring the parties to show cause why the case should not be dismissed for lack of prosecution.  Later in May 2019, Powers filed a response asserting that she and State Farm had been engaged in ultimately unsuccessful settlement negotiations.  Powers's response also noted that she had discovered Carruthers was deceased at some unspecified point after filing her complaint.

Powers also filed a motion to appoint a public administrator for the Estate.  In June 2019, the trial court issued an order which allowed the case to remain on the docket but denied Powers's motion to appoint a public administrator because such an action was within the district court's exclusive jurisdiction.

In August 2019, the McCracken District Court appointed the Office of the Public Administrator (the Administrator) to act as the administrator of  the Estate.  In September 2019, Powers filed a motion pursuant to CR[2] 25.01 and KRS

---

[2] Kentucky Rules of Civil Procedure.

395.278,[3] seeking to substitute "The Office of Public Administrator, Executor of the Estate of Fendol Carruthers, Jr., as Party Defendant for all purposes in this matter and to revive this action." Record (R.) at 49.

On behalf of the Estate, the Administrator opposed the motion, arguing any claims against the Estate would be untimely. According to the Administrator, the claims could not relate back under CR 15.03 because the Estate could not possibly have known about them before the statute of limitations expired in August 2018 (two years after the last BRB payment) because the Estate had not come into existence by that date.[4]

By agreement, the action was then placed in abeyance pending the issuance of the Kentucky Supreme Court's decisions in two cases involving similar issues. *See Jackson v. Estate of Day*, 595 S.W.3d 117 (Ky. 2020); *Williams v. Hawkins*, 594 S.W.3d 189 (Ky. 2020). Soon after our Supreme Court issued its

---

[3] In relevant part, CR 25.01(1) provides that "[i]f a party dies during the pendency of an action and the claim is not thereby extinguished, the court, within the period allowed by law, may order substitution of the proper parties." KRS 395.278 provides in its entirety that "[a]n application to revive an action in the name of the representative or successor of a plaintiff, or against the representative or successor of a defendant, shall be made within one (1) year after the death of a deceased party."

[4] In relevant part, CR 15.03(2) states that an amended pleading "changing the party against whom a claim is asserted" may relate back to the date of the original pleading if "the party to be brought in by amendment (a) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

opinions in those cases, the Administrator filed a motion to remove this action from abeyance.

Farm Bureau also filed a motion for summary judgment. That motion asserted that Farm Bureau filed its answer and cross-claim against Carruthers without knowing he was deceased but soon thereafter, Nicholas Jones, an attorney who had formerly been employed in Powers's counsel's firm, told Farm Bureau's counsel that Carruthers had been dead for about two years. Thus, Farm Bureau argued that the motion to revive should be denied because it was untimely and the motion to substitute the Estate as a defendant was similarly time-barred. In turn, according to Farm Bureau, that meant the underinsured claim was doomed because there were no viable underlying claims against Carruthers or the Estate.

Attached to Farm Bureau's motion was a May 2018 letter its counsel sent to Jason Coltharp, who had been hired by State Farm to represent Carruthers. That letter provided in relevant part: "Since Mr. Carruther's [sic] estate is not yet a party, I suppose I am in the same boat as the Plaintiff and waiting to see if an estate is set up. I am okay with 'wait and see' if you are." R. at 119.

In her response, Powers argued her claims were viable because the statute of limitations had been tolled during settlement negotiations. Alternately, she argued that Farm Bureau and the Administrator were estopped from relying upon the statute of limitations. Powers also argued that Carruthers and the Estate

had received adequate "virtual representation" since State Farm had participated in the lawsuit and was the real party in interest.

In that same document, Powers also asked for leave to file an amended complaint to raise a new claim via KRS 446.070[5] against the Estate based upon Carruthers's violation of KRS 189A.010.[6] Powers asserted that claim would be governed by the five-year statute of limitations provided in KRS 413.120(2) for "[a]n action upon a liability created by statute . . . ."

Powers also submitted an affidavit from her former attorney, Jones, averring in relevant part:

> 2. This case was filed against Fendol Carruthers in April of 2018. While looking to see if the Complaint had been answered I discovered that Mr. Carruthers had died.
>
> 3. I received a call from Jason Coltharp who was representing Mr. Carruthers and State Farm. He felt with some medical documentation that we could settle the case. I in turn did not require him to file an answer at that time.
>
> 4. At this point I felt like any statute would be tolled while we attempted in good faith to work out a settlement.

---

[5] KRS 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

[6] Powers did not tender a copy of her proposed amended complaint. Although our civil rules do not expressly require a party to tender a proposed amended pleading, doing so is "[g]ood practice . . . ." David V. Kramer, 6 Ky. Prac. R. Civ. Proc. Ann. Rule 15.01, Comment 3 (Sep. 2021 update).

R. at 147. By his own admission, therefore, Powers's counsel learned that Carruthers had died soon after filing the complaint.

The Administrator opposed Powers's motion. Attached to the Administrator's response was an affidavit from attorney Coltharp, who represented the Estate and had previously been retained by State Farm to represent Carruthers, explicitly denying that there had ever been a tolling agreement.

In July 2020, the trial court issued an omnibus order: 1) dismissing Powers's claims against Carruthers; 2) denying Powers's motion to revive and to substitute the Estate; 3) granting Farm Bureau's motion for summary judgment; and 4) denying Powers's motion for leave to file an amended complaint. Powers then filed this appeal, naming as appellees Carruthers, the Administrator as the administrator of the Estate, Farm Bureau, and a law firm which formerly represented Powers that had filed a notice of its lien.

On its own initiative, this Court issued an order requiring Powers to show cause why the appeal should not be dismissed because she named as appellees entities which were never made parties in circuit court. After Powers filed her response, a motion panel dismissed Carruthers, the Administrator as Administrator/Executor of the Estate, and the law firm.

# ANALYSIS

## *Standards of Review*

The order at issue involves multiple rulings and, consequently, multiple standards of appellate review. Though not specified in the order, it appears that the trial court dismissed Powers's claims against Carruthers for lack of personal jurisdiction under CR 12.02(b).[7] Because that issue presents a question of law, our review is *de novo*. *Auto Owners Ins. Co. v. Consumers Ins. USA, Inc.*, 323 S.W.3d 781, 783 (Ky. App. 2010). The trial court denied Powers's motion to revive the action and substitute parties under CR 25.01 and KRS 395.278, which we also generally review *de novo*. *Estate of Benton by Marcum v. Currin*, 615 S.W.3d 34, 36 (Ky. 2021). But we review the decision on a motion for leave to amend a complaint under the deferential abuse of discretion standard. *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 869-70 (Ky. App. 2007).

The trial court granted summary judgment to Farm Bureau. Thus, our focus is on:

> whether the trial court correctly found that there were no
> genuine issues as to any material fact and that the
> moving party was entitled to judgment as a matter of law.

---

[7] Kentucky "strongly discourages *sua sponte* dismissals under CR 12.02." *Doster v. Kentucky Parole Bd.*, 308 S.W.3d 231, 232 (Ky. App. 2010). Carruthers did not file a motion to dismiss the claims against him. Of course, being dead, he could not have done so. But the parties briefed the viability of Powers's complaint and her request to substitute the Estate as a defendant. In other words, the trial court did not suddenly dismiss the claims against Carruthers out of the blue. Under these circumstances, we discern no reversible procedural error.

> The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. . . . The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. The word impossible . . . is meant to be used in a practical sense, not in an absolute sense. Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo.

*Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010) (internal quotation marks and citations omitted).[8]

### *The Claims Against Carruthers Were Void Ab Initio*

It is uncontested that Carruthers had died well before Powers filed her complaint. It also appears to be uncontested that Powers's counsel learned of Carruthers's death after the complaint was filed in April 2018 but before the MVRA's statute of limitations expired in August 2018.

An action "filed against a party who is deceased at the time of filing is a nullity as to that party." *Jackson*, 595 S.W.3d at 123.[9] That rule is premised

---

[8] We have examined closely the parties' briefs but have concluded any arguments presented in them which we do not address herein are irrelevant, moot, or otherwise without merit.

[9] Though *Jackson* was issued after Powers filed her complaint, it reaffirmed extant precedent. *See Gailor v. Alsabi*, 990 S.W.2d 597, 600 (Ky. 1999) ("Although the action was filed within the period of limitations, the only defendant named in the complaint was deceased. Since the complaint did not name a party defendant over whom the circuit court could acquire jurisdiction, the complaint was a nullity.").

upon the tenet that a plaintiff "has an affirmative obligation to locate the proper party defendant and determine their vital status. Whether the plaintiff has reason to suspect a defendant may have died is largely irrelevant because the onus to locate the defendant and determine that fact is on the plaintiff." *Williams*, 594 S.W.3d at 195. Here, since Carruthers was dead when Powers filed her complaint, the trial court correctly concluded that her claims against Carruthers were nullities.

*The Trial Court Did Not Err in Denying Powers's*
*Motion to Substitute the Estate*

Generally, though claims against already-deceased persons are nullities, the claims may be viable by application of the relation back doctrine or the timely filing of a proper amended complaint. *See Jackson*, 595 S.W.3d at 123. Powers did not seek to amend her complaint prior to the expiration of the MVRA's statute of limitations. That statute of limitations expired in August 2018 but Powers did not seek to substitute the Estate, via the Administrator, as a defendant until September 2019 and did not file a motion to amend her complaint until June 2020. Thus, Powers fatally failed to act with requisite diligence. *Williams*, 594 S.W.3d at 195 ("If Williams had pursued her rights diligently, readily available information would have allowed her to properly substitute parties and effectuate service within the statute of limitations period.").

Similarly, the relation back doctrine does not help Powers. Under tightly circumscribed "limited circumstances," that doctrine "permits an untimely

-10-

amended complaint to relate back to the original complaint and to avoid a statute-of-limitations defense." *Cabrera v. JBS USA, LLC*, 568 S.W.3d 865, 875 (Ky. App. 2019). Courts strictly construe the relation back doctrine's requirements against those seeking to use it. *Id.*

> Our Supreme Court has held that:
>
> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) *the second and third requirements must have been fulfilled within the prescribed limitations period.*

*Schwindel v. Meade County*, 113 S.W.3d 159, 169-70 (Ky. 2003) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29-30, 106 S. Ct. 2379, 2384, 91 L. Ed. 2d 18 (1986)).

Powers cannot show that the Estate had timely notice because the Estate was not created until after the MVRA's two-year limitations period had already expired. *Jackson* addressed this precise scenario:

> Here, Day passed away almost a full year before Marshall and Jackson filed their initial complaint, and it was not until after the statute of limitations expired that they petitioned for the appointment of a public administrator. The period of limitations for Marshall and Jackson expired on May 30, 2016 and July 1, 2016, respectively, and an administrator was not appointed

until September 7, 2016. Thus, the Estate could not have known about the proceedings against it during the applicable limitations period as required by CR 15.03, *i.e.*, the Estate did not exist during that time frame. Marshall and Jackson emphasize that the Estate has never alleged any prejudice in maintaining its defense to the claims on the merits, but the absence of prejudice is only one aspect of CR 15.03(2)(a). The subsection requires sufficient *notice* such that no prejudice will result, and in this case notice was impossible . . . . While actual, formal notice may not be necessary, the new party must have knowledge of the proceedings, gained during the statutory period. To reiterate, CR 15.03(2) mandates that a party either knew, or should have known, that the action would have been brought against him during the limitations period. Because the Estate did not legally exist until after the statute of limitations expired, this requirement simply cannot be met.

*Jackson*, 595 S.W.3d 122, 125 (paragraph break and citations omitted).

Powers argues her claims were timely filed under KRS 396.011(1), which provides in relevant part that "claims against a decedent's estate which arose before the death of the decedent" are, "if not barred earlier by other statute of limitations[,] . . . barred against the estate . . . unless presented within six (6) months after the appointment of the personal representative . . . ."[10] Our Supreme Court rejected the same core argument in *Williams*:

Williams states that her claim was timely filed under [KRS 396.011] because it was filed one day after the administratrix was appointed. However, the statute expressly provides "if not barred earlier by other statute

---

[10] That statute has been amended twice during the pendency of this action. We quote the current version but neither the 2020 nor 2021 amendments substantively impact this case.

-12-

> of limitations . . . ." Williams's claim is clearly barred by the MVRA statute of limitations, KRS 304.39-230(6), rendering KRS 396.011(1) inapplicable. KRS 396.011, by its plain terms, cannot extend a limitations period that has already run.

*Williams*, 594 S.W.3d at 195-96 (footnote omitted).

### *Other Tolling or Equitable Principles Do Not Apply*

Powers argues other equitable principles should save her complaint. First, Powers contends that the parties agreed to toll the statute of limitations. KRS 413.265 provides in relevant part that "[w]ritten agreements entered into in good faith and at arms length to extend limitations periods for the filing of civil actions . . . shall be valid and enforceable according to their terms." However, Powers has pointed to no written tolling agreement. Instead, Powers relies upon the affidavit of Jones, her former counsel, who only avers that he "felt like any statute would be tolled while we attempted in good faith to work out a settlement." R. at 147.

Counsel's one-sided, subjective feelings do not satisfy KRS 413.265. First, Powers has not shown there was a *mutual* agreement to toll the limitations period. Jones's affidavit only asserts that he subjectively felt that the limitations period would be tolled. Of course, an agreement requires mutual assent and Coltharp's affidavit explicitly denies even discussing tolling with Powers's counsel. *See* R. at 167 ("During none of these [settlement] conversations with

-13-

Plaintiff's counsel was the applicable statute of limitations or the possibility of a tolling agreement ever discussed.").

Second, KRS 413.265 explicitly requires a **written** tolling agreement. We must construe an unambiguous statute according to its terms and so "are not free to insert words or add a provision even if it may be just or desirable to do so." *Lee v. Kentucky Department of Corrections*, 610 S.W.3d 254, 262 (Ky. 2020). Powers cannot point to any written tolling agreement, a baseline requirement for application of KRS 413.265. Consequently, her arguments regarding application of KRS 413.265 are without merit.[11]

We similarly reject Powers's argument that the limitations period was tolled via equitable tolling or equitable estoppel. "Equitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Williams*, 594 S.W.3d at 193 (internal quotation marks and citation omitted). To apply equitable tolling, Powers must show "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood

---

[11] Relatedly, we reject Powers's argument that she should have been able to conduct more discovery. Powers asks for discovery on matters which she or her counsel already knew, or reasonably should have known. For example, Powers should know when she learned of Carruthers's death or when and how she allegedly agreed to toll the statute of limitations with opposing counsel. This case had been pending for over two years when the trial court issued its final decision. The trial court did not err by declining to let Powers engage in fishing expedition-type discovery before issuing its ruling.

-14-

in [her] way and prevented timely filing . . . ." *Williams*, 594 S.W.3d at 194 (internal quotation marks and citation omitted). Powers cannot show that she pursued her rights diligently because, like the plaintiff in *Williams*, if she had done so "readily available information would have allowed her to properly substitute parties and effectuate service within the statute of limitations period." *Id.* at 195.

Powers also has not shown any extraordinary circumstance which prevented her from acting sooner, especially since her counsel knew about Carruthers's death before the expiration of the statute of limitations. Thus, "this case does not involve a procedural technicality nor circumstances beyond [Powers's] control. The information necessary to pursue a timely claim against [Carruthers's] estate was readily and publicly available and no extraordinary circumstances exist to justify equitable tolling." *Id.* at 196.

Powers also is not entitled to benefit from equitable estoppel. "Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party . . . ." *Id.* "[M]ere silence with respect to the operative fact is insufficient. There must be an affirmative act by the party charged." *Gailor*, 990 S.W.2d at 603. Powers has not shown that any opposing party affirmatively concealed anything material.

Powers argues that Jones's affidavit and a May 2018 letter from Farm Bureau's counsel to Coltharp "both establish that State Farm represented that there

would be no need to open or substitute the Estate because settlement was imminent." Appellant's brief, p. 20. Neither document bears the heavy weight placed upon it by Powers. The May 2018 letter, which was sent roughly three months before the statute of limitations expired, was not sent to Powers's counsel. Instead, it appears uncontested that Powers's counsel obtained it in discovery after the statute of limitations had expired. How can Powers have timely relied upon a letter she did not receive prior to the expiration of the limitations period? Of course, the letter states that Farm Bureau's counsel knew soon after the action was filed that Carruthers had died – but it states he was told that fact by Powers's counsel!

Similarly, the letter states that since Carruthers's Estate was not yet a party, Farm Bureau's counsel was "waiting to see if an estate is set up. I am okay with 'wait and see' if you are." R. at 119. Though stressed by Powers, that anodyne language did not conceal anything from her or contain any falsities, her arguments to the contrary notwithstanding. It is a simple acknowledgement that Farm Bureau was waiting to see if Powers would timely seek to substitute the Estate as a defendant. Farm Bureau could have moved to substitute the Estate as a defendant for its cross-claim before the expiration of the statute of limitations, but its failure to do so impacts only its own claims' viability, not those of Powers. The burden to act with diligence to save her claims was on Powers and nothing in the

letter obviated or diminished that burden.  Moreover, contrary to Powers's

assertions, **nothing** in the letter says a settlement is imminent.[12]

Powers's claims regarding the affidavit of Jones, her former counsel,

are similarly unavailing.  That affidavit states that, on an unspecified date, Coltharp

stated to Jones that "with some medical documentation . . . we could settle the

case."  R. at 147.  That alleged statement by Coltharp contains no omissions or

falsities designed to make Powers remain fixed until the statute of limitations

expired.  It also made no settlement promises – "could" is a word expressing only a

possibility that something might occur.  Indeed, the letter notes that Coltharp

needed to review medical documents before a settlement could be reached.  In

other words, the letter only showed ongoing settlement negotiations.  "Mere

---

[12] To show the lack of settlement language, we set forth the entirety of the body of the letter:

> Nick Jones advised that State Farm was the insurer of Fendol Carruthers and that you have been hired to represent the defense.
>
> Nick also advised that Mr. Carruthers passed away in 2016.  He is hopeful that you all can resolve the claims against Defendant Carruthers without an estate having to be set up.  He indicated to me that he was going to continue to get medical records to send to you and that he will copy me on them, as well.
>
> Enclosed is my Answer and Crossclaim that I filed on behalf of Kentucky Farm Bureau.  Since Mr. Carruther's [sic] estate is not yet a party, I suppose I am in the same boat as the Plaintiff and waiting to see if an estate is set up.  I am okay with "wait and see" if you are.
>
> I look forward to working with you.

R. at 119.

negotiations looking toward amicable settlement do not afford a basis for estoppel to plead limitations." *Gailor*, 990 S.W.2d at 603.

In sum, Powers points to nothing specific in the record showing that any opposing counsel or party took any specific affirmative act(s) designed to deceive or mislead her from acting before the statute of limitations expired. Accordingly, Powers has not shown an entitlement to estoppel.

Though Powers asks us to allow her to have more time for discovery, she already had an opportunity to submit proof. Neither we nor Powers are, of course, privy to all statements and acts made in private by any named or proposed defendant. But that does not matter here because, for equitable estoppel to apply, Powers had to rely upon the material misrepresentation(s). *Williams*, 594 S.W.3d at 196. And it is beyond logical dispute that Powers could not have relied upon any hypothetical misrepresentations which she may uncover in discovery because she could not have relied upon a misrepresentation of which she was unaware.

In sum, though they largely align, even if we were to recognize any minor quibbles between the versions of events in the record (such as in the affidavits of Jones and Coltharp), Powers cites to *nothing* showing *any* actionably specific misrepresentations by *anyone*.

*Virtual Representation Does Not Apply*

We turn to Powers's argument that the trial court should have permitted her to amend her complaint to substitute the Estate as a defendant pursuant to the virtual representation doctrine. As summarized in *Jackson*, that doctrine "recognizes that a party joined in a law suit [sic] may effectively represent another not so joined, where they have a common interest and the former may be depended upon to present the merits of the controversy which would protect the rights of the latter." *Jackson*, 595 S.W.3d at 125-26 (internal quotation marks and citations omitted). The upshot of the doctrine here would be that State Farm – though not a named party – has actually virtually represented the Estate's interests all along.

Powers bases her virtual representation argument on *Harris v. Jackson*, 192 S.W.3d 297 (Ky. 2006). *Harris*, as here, involved a suit based upon injuries allegedly sustained in a vehicular accident. After the case had been pending a little over a year, the defendant died. Though defense counsel knew of the defendant's death, counsel remained silent. Thus, the plaintiff did not learn of the defendant's death until after the expiration of the one year allotted for revival by KRS 395.278. Consequently, the trial court dismissed the claims.

On appeal, our Supreme Court held that the deceased defendant's insurance carrier was the real party in interest but was "not a recognized party

under our long standing [sic] precedent." *Harris*, 192 S.W.3d at 303. The Court then concluded that the dead defendant's estate's interests had been virtually represented by the insurance carrier all along because it had "the duty to defend, and pay the defense's costs, as well as the right to settle as it consider[s] appropriate. In every sense of the word, State Auto is a real party in interest . . . . Thus, we are assured . . . that adequate 'virtual representation' has been provided." *Id.* at 304. The *Harris* Court also found that the defendant's estate was estopped from relying upon the expiration of the statute of limitations due to counsel's silence after learning of the defendant's death.

*Harris* is materially distinguishable. First, unlike in *Harris*, the defendant here had already died before the action was filed.[13] *Jackson* distinguished *Harris* on similar grounds. *See Jackson*, 595 S.W.3d at 124. Second, the "primary issue to be addressed" in *Harris* was the impact of counsel's silence about his client's death, 595 S.W.3d at 123, an issue which is not present here.

Third, the concept of virtual representation is premised upon it being impracticable to join as a party everyone who might have an interest in the action.

---

[13] It is unclear how Coltharp could properly have been hired to represent an already-deceased client. *See, e.g.*, *Kentucky Bar Ass'n v. Geisler*, 938 S.W.2d 578, 579 (Ky. 1997) (citing favorably an opinion from the American Bar Association which held that "[w]hen . . . death occurs, however, the lawyer ceases to represent that identified client."). Though interesting, we need not explore that matter further to resolve the issues in this appeal.

*Carroll v. First Nat'l Bank & Tr. Co. of Lexington*, 312 Ky. 380, 381, 227 S.W.2d 410, 410 (1950) ("The doctrine of virtual representation . . . acknowledges the impracticability, in certain types of proceedings, of making all persons parties who might have a contingent or remote interest in the subject matter."). For example, it was impracticable for the plaintiff in *Harris* to join timely the deceased defendant's estate as a party because plaintiff's counsel did not timely learn of the defendant's death. Here, Powers could have sought to substitute timely the Estate for Carruthers prior to the expiration of the statute of limitations. *Jackson*, 595 S.W.3d at 126 ("We note that in Marshall and Jackson's case, it was not impracticable to properly substitute the Estate for Day given the sheriff's return of service noting that Day was deceased before the statute of limitations had run on either Marshall or Jackson's claim."). Virtual representation is not intended to protect a party from its failure to act with due speed and diligence.

*Because the Underlying Claims Fail, the Underinsured Claims Must Also Fail*

The question then becomes whether an underinsured claim may lie if there are no viable underlying claims. The answer is no.

Powers's policy with Farm Bureau stated in relevant part that Farm Bureau would pay underinsured benefits which Powers was "legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury . . . ." R. at 122 (emphasis omitted). Farm Bureau contends Powers

-21-

cannot recover under that clause because she is not legally entitled to recover anything from Carruthers or the Estate. Though Powers argues strenuously to the contrary, we agree with a treatise on Kentucky motor vehicle insurance laws that our Supreme Court in *Jackson* left "no doubt" that Farm Bureau is correct. *See* Robert D. Monfort, *Kentucky Handbook Series*, *Ky. Motor Veh. Ins. Law* § 13:8, n.14 (Dec. 2021 update).

Powers sued Carruthers and Farm Bureau prior to the expiration of the two-year statute of limitations. But, as previously explained, the claims against Carruthers were nullities and Powers did not timely seek to substitute the Estate as a defendant. Therefore, the sole remaining claim is the underinsurance claim against Farm Bureau. Though Powers unsuccessfully argues to the contrary, that is the same core scenario present in *Jackson*.

In *Jackson*, a two-car vehicle accident occurred and, several months before the expiration of the two-year MVRA limitations period, the occupants of one vehicle sued the other vehicle's driver. "Unbeknownst to all parties, [the defendant-driver] had died almost a full year earlier . . . ." *Jackson*, 595 S.W.3d at 120. A few months before the limitations period expired, the plaintiffs amended their complaint to add underinsured claims.

After the statute of limitations had expired, the plaintiffs obtained the appointment of a public administrator for the defendant-driver's estate. The

plaintiffs then received permission to file an amended complaint substituting as a defendant the defendant-driver's estate. Soon thereafter, the underinsurance carrier moved for summary judgment, arguing the claims against the other driver and his estate were untimely and thus doomed the underinsured claim. And the defendant-driver's estate, via the public administrator, moved for summary judgment on statute of limitations grounds. The trial court granted summary judgment to the underinsurance carrier and the other driver's estate. *Id.* at 119-21.

Unusually, our Supreme Court decided to address the viability of an underinsured claim without an accompanying viable claim against the tortfeasor – even after admitting "this issue is not properly before the Court on discretionary review." *Id.* at 128. The parties disagree about whether that analysis is binding.

We begin by noting the obvious: our Supreme Court's decision to address the underinsured issue at all is **extremely** unusual. In fact, in the same opinion the Court had already declined to review a virtual representation argument because it was not properly before the Court. *Id.* at 126. Therefore, it is inescapable our Supreme Court fervently wanted subsequent courts to utilize its underinsured discussion.

We agree with Powers that the underinsured discussion in *Jackson* is dicta. *See, e.g.*, *Cawood v. Hensley*, 247 S.W.2d 27, 29 (Ky. 1952) ("A statement in an opinion not necessary to the decision of the case is obiter dictum."). Indeed,

the Court implicitly acknowledged as much by noting that the issue was not properly before it. And we also agree with Powers that dicta is not binding precedent. *See, e.g.*, *Board of Claims of Kentucky v. Banks*, 31 S.W.3d 436, 439 n.3 (Ky. App. 2000). However, dicta may be "persuasive or entitled to respect" if it was "intended to lay down a controlling principle." *Cawood*, 247 S.W.2d at 29. In other words, even dicta can be helpful.

Here, our Supreme Court must have intended to illuminate the bench and bar about the viability of underinsured claims without viable underlying claims (*i.e.*, it intended to lay down a controlling principle) because it chose "for clarity" to address the issue after declining to do so for another issue. *Jackson*, 595 S.W.3d at 128. In short, even though the underinsured discussion in *Jackson* is dicta, we deem it to be helpful and entitled to respect.

To understand its impact here, we set forth the underinsured discussion in *Jackson* in full:

> In its order granting summary judgment, the trial court also held that because a tortfeasor's liability is an element of an underinsured motorist (UIM) claim, *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 898 (Ky. 1993), and because [deceased defendant] Day is not liable based on the statute of limitations, [plaintiffs] Marshall and Jackson were precluded from recovering UIM [underinsured] benefits from USAA. The Court of Appeals adopted the trial court's opinion verbatim. Although USAA was named as a respondent and filed a reply brief addressing the UIM issue, this issue is not properly before the Court on discretionary review.

CR 76.20(3)(d) requires that a motion for discretionary review contain the questions of law involved. Despite noting that their UIM claim was dismissed because the claims against the Estate were dismissed, Marshall and Jackson did not identify the UIM argument as a question of law for this Court to review and they did not address it in their brief. Under these circumstances, we generally decline review. *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 41 (Ky. 2017).

However, for clarity, we will reiterate that a UIM carrier is "liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured . . . . [I]f the underinsured tortfeasor could not be held liable for an item of damages, that item is not 'uncompensated damages' payable by the UIM carrier." *Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311, 316 (Ky. 2006). Therefore, proof that the tortfeasor is an underinsured motorist[14] is an essential fact that must be proved before the insured can recover judgment in a lawsuit against the UIM insurer. *Coots*, 853 S.W.2d at 899.

*Jackson*, 595 S.W.3d at 127-28.

Though the Court did not explicitly say "an underinsured claim fails if the plaintiff sues a deceased tortfeasor and fails to add/substitute the dead tortfeasor's estate prior to the expiration of the statute of limitations," that is the

---

[14] Here, *Jackson* contains the following footnote: "KRS 304.39-320(1) defines underinsured motorist as 'a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident.'" 595 S.W.3d at 128 n.9.

clear implication from the opinion. This is a view of *Jackson* shared by at least

one treatise. *See Ky. Motor Veh. Ins. Law* § 13:8 n.14.

This "no potentially liable tortfeasor, no underinsured claim" principle

impacts the case before us. Powers's policy provides that Farm Bureau is required

to pay underinsured damages which Powers is "legally entitled to recover from the

owner or operator of an underinsured motor vehicle . . . ." R. at 122 (emphasis

omitted). Here, Powers is not legally entitled to recover *any* judgment against

Carruthers or the Estate. So, because Powers's claims against Carruthers and the

Estate fail, so do her underinsured claims against Farm Bureau.

Powers stresses a contradictory unpublished opinion we issued prior

to *Jackson*, *Shackelton v. Estate of Fries*, No. 2017-CA-000121-MR, 2019 WL

3987760 (Ky. App. Aug. 2, 2019). In *Shackelton*, we held that:

> the circuit court erred in finding Shackelton's UIM claim
> hinged on the legal viability of his tort lawsuit
> against Fries [the underinsured tortfeasor]. Appellees are
> correct that UIM benefits are not available if the plaintiff
> cannot prove the tortfeasor's fault . . . . But we see
> nothing preventing Shackelton from doing so in this case.
> Establishing "legal liability" does not require Shackelton
> to obtain a judgment against Fries. It does not even
> require Shackelton to file a lawsuit against Fries. The
> UIM case stands on its own. The dismissal of
> Shackelton's negligence action against Fries does not
> prevent him from proving Fries' legal liability, *i.e.*, fault
> and damages, in the UIM action against State Farm.

*Id.* at *8 (citation omitted).

Although *Jackson* did not overrule *Shackelton* (in fact, *Jackson* does not mention *Shackelton*), the two opinions conflict. We choose to follow *Jackson* because it is published, more recent, and was issued by our state's highest court. Indeed, our Supreme Court depublished *Shackelton*[15] and unpublished opinions are not binding authority. *Kendall v. Godbey*, 537 S.W.3d 326, 335 (Ky. App. 2017).

We are not persuaded by Powers's arguments to the contrary. Briefly, we agree with Powers that it is not absolutely necessary for the tortfeasor to be sued for an insured to raise a viable underinsured claim. By stressing the requirement that underinsured damages are available only if the underinsured tortfeasor can be held liable, *Jackson* effectively holds that a tortfeasor must be able to be held liable for an underinsured claim to be viable, even if the plaintiff does not actually try to hold the tortfeasor liable. In other words, the tortfeasor does not necessarily have to be named as a defendant in a suit seeking underinsured benefits, but underinsured claims cannot properly lie if the potential claims against the tortfeasor are inviable. Here, the claims against Carruthers and the Estate are inviable, for the reasons we have discussed. Consequently, we affirm the trial court's grant of summary judgment to Farm Bureau.

---

[15] We are aware that CR 76.20(9)(a) provides that denial of discretionary review "does not indicate approval of the opinion or order sought to be reviewed and shall not be cited as connoting such approval." We do not know why the Court ordered *Shackelton* to be depublished but are confident it would not have done so if it wished *Shackelton* to be binding authority.

-27-

*The Trial Court Did Not Abuse Its Discretion When It Denied
Powers's Motion to Amend Her Complaint*

Finally, Powers asserts that the trial court erred by denying her request to amend her complaint to assert a new claim for Carruthers's violation of KRS 189A.010.  That claim would be brought under KRS 446.070, which permits someone "injured by the violation of any statute" to "recover from the offender such damages as he sustained by reason of the violation . . . ."  According to Powers, the claim would be timely because KRS 413.120(2) provides a five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability."

The parties have not cited, nor have we independently located, precedent discussing the viability of such a proposed claim.  Under these facts, we affirm the trial court's decision to deny Powers's motion for leave to amend her complaint for reasons not addressed by the trial court or parties.  *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).[16]

For nearly eighty years, the rule in Kentucky has been that the language of KRS 413.120(2) providing a five-year limitations period for actions

---

[16] KRS 446.070, the mechanism by which Powers sought to bring her claims regarding KRS 189A.010, does not provide a private right of action for *all* persons for *all* violations of *all* Kentucky statutes.  Instead, KRS 446.070 "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected."  *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).  We decline to examine whether Powers satisfies those criteria because her claim would be untimely, regardless of whether it otherwise would be viable.

"upon a liability created by statute" does not apply to mere codification of common law claims; instead KRS 413.120(2) is "designed to deal with new liabilities created by statute[,]" and not to "repeal" or "pre-empt" existing limitations periods. *Robinson v. Hardaway*, 293 Ky. 627, 629, 169 S.W.2d 823, 824 (1943). The same basic reasoning was recently reaffirmed by our Supreme Court. Specifically, the Court held: "The five-year limitation period provided by KRS 413.120(2) for claims brought pursuant to a statute does *not* apply to claims based on a statutory provision that 'merely codifies common law liability and does not create a new theory of liability.'" *Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W.3d 69, 73-74 (Ky. 2015) (quoting *Toche v. American Watercraft*, 176 S.W.3d 694, 698 (Ky. App. 2005)).

After all, as our Supreme Court explained, "a theory of liability cannot be regarded as having been 'created by statute' as stated in KRS 413.120(2) if it otherwise existed at common law prior to the enactment of the statute." *Overstreet*, 479 S.W.3d at 74. So, we must determine if Powers's proposed claim already existed at common law or sprang into being with the enactment of KRS 189A.010. *See* 54 C.J.S. *Limitations of Actions* § 118 (2022) ("A 'liability created by statute,' within meaning of a statute of limitations for claims based upon liability created by statute, is a liability which comes into being solely by statute, and one which had no existence prior to the enactment creating it.").

-29-

As two leading cases show, in determining whether Powers's proposed claim could have been brought prior to the enactment of KRS 189A.010, we must distill Powers's proposed claim to its fundamental essence.

First, in *Overstreet*, the administrator of the estate of a former long-term care facility resident sued the facility for violating several provisions of KRS 216.515, which is a bill of rights for residents of long-term care facilities. Because the action was filed three years after the former resident's death, the "central question" was whether the five-year statute of limitations contained in KRS 413.120(2) applied. *Overstreet*, 479 S.W.3d at 73.

Our Supreme Court concluded that some aspects of KRS 216.515 created whole new causes of action unknown at common law, such as alleging a facility breached its duty to allow a resident to wear his or her own clothing. *Id.* at 75-76. However, the Court concluded that it was "obvious" that other claims – though based on the specific language of KRS 216.515(6) – presented "nothing other than a common law personal injury claim." *Id.* at 76. For example, KRS 216.515 required residents to be kept free from mental and physical abuse; the Court concluded that merely "encompasses, in the context of a nursing home environment, the traditional common law duty to avoid negligently or intentionally injuring another person" and thus did not "present a new theory of liability." *Overstreet*, 479 S.W.3d at 76.

Second, this Court took the same basic approach in *Toche*. In that case, a plaintiff argued that her claims against others who caused her injuries by violating a statute governing civil liability for negligent operation of a watercraft were claims based on a statute and thus were within the scope of KRS 413.120(2). *Toche*, 176 S.W.3d at 696-97. We summarily rejected that argument, succinctly holding the watercraft statute "merely codifies common law liability and does not create a new theory of liability. Toche's claim is still a basic personal injury claim under common law." *Id.* at 698. Similarly, we likewise rejected Toche's argument that KRS 413.120(2) applied to her claims brought under KRS 446.070 against persons who allegedly had violated a federal boating regulation: "KRS 446.070 does not create a new theory of liability. . . . Toche's claim is a basic personal injury claim under common law." *Id.* (citation and footnote omitted).

Application of the rationale in *Overstreet* and *Toche* dooms Powers's proposed new claim. The enactment of KRS 189A.010 did not suddenly give Powers the ability to sue Carruthers for her injuries. To the contrary, Powers would have been able to bring a common law personal injury claim against Carruthers if KRS 189A.010 had never been enacted. In short, the heart of Powers's proposed claim is a common law personal injury claim so the limitations

period of KRS 413.120(2) does not apply.  Thus, since Powers's proposed claims were untimely, the trial court did not err in declining to permit her to raise them.[17]

## CONCLUSION

For the foregoing reasons, the McCracken Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daryl T. Dixon
Paducah, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF FOR APPELLEE:

Mike Moore
Paducah, Kentucky

---

[17] Our conclusion that all of Powers's claims fail renders moot her assertion that the motion panel erred in dismissing Carruthers and the Administrator as appellees.