RENDERED: JUNE 13, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0309-DG

BILLY E. POWERS, AS ADMINISTRATOR             APPELLANT
OF THE ESTATE OF DONNA POWERS


                 ON REVIEW FROM COURT OF APPEALS
V.                         NO. 2020-CA-1011
                 MCCRACKEN CIRCUIT COURT NO. 18-CI-00258


KENTUCKY FARM BUREAU MUTUAL             APPELLEES
INSURANCE COMPANY; AND ESTATE OF
FENDOL CARRUTHERS, JR.


**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

Donna Powers (Powers) appeals from an omnibus order of the McCracken Circuit Court which (1) dismissed Powers's negligence claim against her alleged tortfeasor, Fendol Carruthers, Jr.; (2) denied Powers's motions for substitution and revival; (3) denied Powers's motion for leave to amend her complaint to raise a new claim; and (4) granted summary judgment in favor of Powers's insurance carrier Kentucky Farm Bureau (KFB). The Court of Appeals affirmed the McCracken Circuit Court. Having reviewed the record, we now affirm the Court of Appeals.

**FACTS AND BACKGROUND**

Powers and Carruthers were involved in an automobile accident on November 4, 2015. According to the parties, Carruthers was charged with, and

later pleaded guilty to, operating a motor vehicle under the influence of alcohol or drugs as a result of the accident. Powers alleges she sustained serious, permanent injuries from the crash. Carruthers was insured by State Farm Mutual Automobile Insurance Company (State Farm) at the time of the accident and had an insurance policy limit of $50,000.

Shortly after the accident, Powers began receiving basic reparation benefits, or Personal Injury Protection (PIP) benefits, from her own insurance carrier KFB. The Kentucky Motor Vehicle Reparations Act (MVRA) generally imposes a two-year statute of limitations for tort actions arising from motor vehicle accidents, accruing on the date of injury or death, or the plaintiff's last PIP payment. KRS 304.39-230(6). Relevantly, Powers received her last payment of PIP benefits on August 4, 2016, therefore, any tort claim she wished to assert arising from her accident with Carruthers must have been filed by August 4, 2018.

Well within the statute of limitations, on April 3, 2018, Powers filed a complaint in McCracken Circuit Court in which she asserted a negligence claim against Carruthers and an underinsured motorist (UIM) claim against her insurance carrier KFB. Seemingly unbeknownst to Powers or her attorneys, however, Carruthers had actually died, and administration of his Estate dispensed with, two years earlier in March 2016. Carruthers's death is relevant as "[a] suit filed against a party who is deceased at the time of filing is a nullity as to that party. Unless proper amendments are made prior to the expiration of

2

the statute of limitations . . . the claim is generally barred." *Jackson v. Est. of Day*, 595 S.W.3d 117, 122–23 (Ky. 2020).

The record indicates, however, that it was not only Powers and her attorneys who were unaware of Carruthers's death. Soon after Powers filed her complaint, State Farm "retained" attorney James Coltharp, Jr., to represent the then-deceased Carruthers. Mr. Coltharp later testified by affidavit that he was unaware of Carruthers's death at the time he was hired by State Farm. KFB then filed an answer to Powers's complaint and asserted a crossclaim against Carruthers, suggesting that it too was unaware that Carruthers had died. An affidavit appearing in the record signed by Powers's attorney, Nick Jones, suggests that he was the first attorney to learn of Carruthers's death sometime in April 2018. This newfound knowledge should have placed Powers and her attorneys on notice that any claims filed against Carruthers in his individual capacity were null. Mr. Coltharp's affidavit suggests that Mr. Jones informed him of Carruthers's death at the end of April 2018. A filing from KFB appearing in the record suggests that KFB finally learned of Carruthers's death in May 2018.

Despite a seemingly unanimous awareness of Carruthers's death having been reached, this case then remained stagnant for the next year. Because he was deceased and was not served with process, Carruthers never filed an answer to Powers's complaint; nor did Powers take any action to rectify the portion of her complaint that was a nullity against Carruthers. Powers did not promptly move the district court to appoint the Public Administrator as

3

Administrator of Carruthers's Estate (the Estate), and she did not seek to amend her complaint to name the Estate as the proper defendant to her claim. Rather, the record is silent until May 2019 when the circuit clerk issued a Notice to Dismiss for Lack of Prosecution. In her response to that notice, Powers stated that she had been engaged in unsuccessful settlement negotiations with State Farm for the last year and would soon be filing a motion to appoint the Public Administrator.

Powers then erroneously moved the circuit court to appoint the Public Administrator, and the circuit court denied the motion because that function is within the exclusive jurisdiction of the district court. KRS 395.380–390. It would not be until August 2019 that Powers successfully moved the district court to appoint the Public Administrator to act as Administrator of the Estate. We note that Mr. Coltharp then began representing the Estate as its attorney. One month later—nearly four years after the car accident giving rise to this litigation, and more than one year after the relevant statute of limitations had expired—Powers moved to substitute the Estate as a party defendant to her claim and to revive her action.

In response to Powers's motion to substitute and revive, the Estate argued that any claim against Carruthers was a nullity and any claim against the Estate was now time-barred by the MVRA's two-year statute of limitations. The circuit court then entered an order abating the action pending this Court's decisions in *Jackson,* 595 S.W.3d 117, and *Williams v. Hawkins,* 594 S.W.3d 189 (Ky. 2020). After those decisions were rendered, the Estate filed a Motion

4

to Remove Case from Abeyance and for a Ruling on Plaintiff's Motion to Revive. KFB then filed its own Motion for Summary Judgment in which it likewise argued that Powers's motion to substitute was untimely. KFB also argued that Powers's inability to recover from her tortfeasor, Carruthers, precluded her from succeeding on her UIM claim because, under the terms of its insurance agreement, KFB could only be held liable for damages in excess of those Powers is "legally entitled to recover" from her tortfeasor.

Powers responded and argued to the circuit court that the parties had agreed to toll any statute of limitations while engaged in settlement negotiations, and that State Farm, a nonparty to the litigation, had provided sufficient "virtual representation" to the Estate as to permit her claim to proceed against the Estate. Powers also moved to amend her complaint to assert another claim against Carruthers under Kentucky Revised Statute (KRS) 446.010 which creates a private cause of action for any person "injured by the violation of any statute." Powers argued that Carruthers's violation of the statute prohibiting the operation of a motor vehicle under the influence of alcohol or drugs gave rise to this additional claim. Powers also subsequently argued that her UIM claim against KFB should be permitted to proceed.

In July 2020, the circuit court issued an omnibus order dismissing Powers's claim against Carruthers and denying Powers's motions to substitute the Estate, revive her action, and amend her complaint to assert a new claim. The circuit court also granted KFB's motion for summary judgment. Powers

5

appealed to the Court of Appeals which affirmed the circuit court. Powers then filed a motion for discretionary review with this Court, which we granted.

We also note that Powers herself sadly passed away in November 2023 after this Court granted discretionary review. Billy Powers, Administrator of the Estate of Donna Powers, was then substituted as the Appellant in this action, and the action was revived.

## ANALYSIS

### I. Powers's claim against Carruthers is null, and her attempted claim against the Estate is untimely.

As previously stated, the MVRA's two-year statute of limitations required that Powers bring any tort claims arising from her 2015 accident with Carruthers by August 4, 2018. In filing what she thought would be a timely complaint, Powers erroneously named Carruthers, a deceased party "over whom the circuit court could [not] acquire jurisdiction." *Gailor v. Alsabi*, 990 S.W.2d 597, 600 (Ky. 1999). As such, the portion of Powers's complaint that named the deceased Carruthers was a "nullity as to that party," and "[u]nless proper amendments are made prior to the expiration of the statute of limitations . . . the claim is generally barred." *Jackson*, 595 S.W.3d at 122–23. However, Powers did not seek to amend her complaint, via a motion for substitution, until September 2019, over a year after the relevant statute of limitations had expired. Powers now advances a litany of equitable arguments concerning her "negotiations" with Mr. Coltharp—the attorney hired by State Farm who outwardly represented the deceased Carruthers—that she contends should permit her untimely claim against the Estate. However, the mere fact

6

that the Estate, without an Administrator, was nonexistent at the time forecloses many of Powers's arguments. It is further evident that Mr. Coltharp had no agency to act on behalf of Carruthers or the nonexistent Estate. Before addressing Powers's arguments in full, we first seek to clarify Mr. Coltharp's relationship to the deceased Carruthers for the bench and bar.

Mr. Coltharp's affidavit appearing in the record suggests that he was first retained by State Farm to defend Carruthers against Powers's suit on April 24, 2018. He attested that it was on that same date that Powers's attorney, Mr. Jones, informed him that Carruthers had died in 2016. Regardless of any representation agreement between State Farm and Mr. Coltharp, the fact that Carruthers was deceased prevented the establishment of any attorney-client relationship between Mr. Coltharp and Carruthers. "[P]rior to death, a lawyer acts on behalf of an identified client. When the death occurs, however, the lawyer ceases to represent that identified client." *Ky. Bar Ass'n v. Geisler*, 938 S.W.2d 578, 579 (Ky. 1997) (citing ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 95–397 (1995)). Mr. Coltharp never truly represented Carruthers, and had no agency to act on his behalf. Immediately upon learning of Carruthers's death, Mr. Coltharp likely recognized that he was without a client; it appears from the record that Mr. Coltharp continued to engage in at least some preliminary settlement discussions with Powers's attorneys as will be discussed below. The record reveals that Mr. Coltharp formally began representing the interests of the

7

Estate after the district court appointed the Public Administrator to act as its Administrator in August 2019.

### a. Negotiations between Mr. Coltharp and Mr. Jones

In an affidavit appearing in the record, Mr. Coltharp attested that he spoke with Mr. Jones on multiple occasions regarding this case throughout May 2018. Mr. Coltharp attested that he discussed the "case's potential value" with Mr. Jones and that he received hundreds of pages of Powers's medical records from Mr. Jones. Mr. Coltharp further attested that he requested a settlement demand from Powers and that she demanded the full amount of Carruthers's State Farm policy limits. Mr. Coltharp attested that he then requested that Powers execute a medical authorization to enable him to complete his investigation of Powers's medical history before attempting to resolve the case. Mr. Coltharp attested that eight weeks later he had still not received Powers's medical authorization and that he had followed up with Mr. Jones on at least two separate occasions regarding the requested authorization. Mr. Coltharp attested that he did not hear from Mr. Jones or any other attorney representing Powers for months. In February 2019—six months after the relevant limitations period had expired—Mr. Coltharp wrote Mr. Jones a letter informing him that he would "be closing [his] file on the matter." Mr. Coltharp attested that he did not receive a response to that letter until June 2019 when he was copied on a renewed settlement demand from another one of Powers's attorneys. Mr. Coltharp attested that he never received the requested medical authorization from Powers.

Mr. Jones's affidavit appearing in the record is far less detailed concerning any negotiations between the attorneys. Mr. Jones attested that, on their first contact, Mr. Coltharp "felt with some medical documentation that we could settle the case." He attested that he did provide Mr. Coltharp with Powers's medical records. He further attested that:

> Negotiations continued throughout the summer of 2018. After a lengthy period of time, I received a letter from the State Farm Defense attorney, stating that the case was closed, and was improperly filed because the Defendant had died. At this point State Farm was no longer willing to negotiate the case.

### b. Tolling of the Statute of Limitations

Powers argues to this Court that the parties to the litigation entered into an agreement to toll the statute of limitations on any claims that Powers may have sought to bring against the Estate. As evidence of this agreement, Powers points to the portion of the affidavit from her attorney, Mr. Jones, in which he attested that Mr. Coltharp represented to him that it might be possible to settle the case if Powers provided appropriate medical documentation of her injuries. Mr. Jones attested that, "At this point I felt like any statute would be tolled while we attempted in good faith to work out a settlement."

Powers is correct that the legislature has endorsed the enforceability of written agreements that extend the limitations periods of civil claims. KRS 413.265 ("Written agreements entered into in good faith and at arms length to extend limitations periods for the filing of civil actions . . . shall be valid and enforceable according to their terms.") However, Powers has failed to produce any "written agreement" memorializing the parties' shared understanding that

9

the limitations period would be tolled pending settlement negotiations. One party's unreciprocated beliefs or assumptions will not suffice to extend or toll the statute of limitations. Further, we surmise that any enforceable agreement to toll the statute of limitations on claims against the Estate would necessarily have to be entered into *with the Estate*, which we note was not opened until the district court appointed the Public Administrator to act as Administrator of the Estate in August 2019, a year after the statute of limitations had expired. Here, the burden was on Powers and her attorneys to recognize that Mr. Coltharp had no agency to bind the nonexistent Estate to any tolling agreements.

## c. **Virtual Representation**

Powers next argues that Carruthers's insurer, State Farm, provided sufficient virtual representation of the Estate's interests during the statute of limitations period so as to excuse her untimely attempt at asserting a claim against the Estate. Powers would have this Court hold that the Estate's interests were sufficiently represented from the very beginning of this litigation.

"The doctrine of virtual representation 'recognizes that a party joined in a law suit may effectively represent another not so joined, where they have a common interest, and the former may be depended upon to present the merits of the controversy which would protect the rights of the latter.'" *Jarvis v. Nat'l City*, 410 S.W.3d 148, 159 (Ky. 2013) (quoting *Carroll v. First Nat'l Bank & Tr. Co.*, 227 S.W.2d 410, 410 (Ky. 1950)). However, the equitable doctrine of virtual representation has most often been employed to establish jurisdiction over the interests of nonparties where those nonparties are unascertainable, unborn, or

10

even nonexistent, and may have an interest in the proceedings before the court—for instance remaindermen with a future interest in real property. *See* 31 Am. Jur. 2d *Executors & Administrators* § 729; *e.g. Jarvis*, 410 S.W.3d at 159–60; *Masonic Widows' & Orphans' Home & Infirmary v. Hieatt Bros.*, 247 S.W. 34, 36 (1923). The doctrine may also then serve to bind the nonparty to the judgment of the court, thereby precluding a later relitigation of the issues. *See* 50 C.J.S. *Judgments* § 1094. The doctrine recognizes the "impracticability" of making all persons who might have an interest in certain types of proceedings parties to the litigation. *Carroll*, 227 S.W.2d at 410. It is "founded upon convenience and necessity." *Id.*

Despite the traditional application of the virtual representation doctrine, this Court has *once* held that the doctrine was a suitable vehicle to establish jurisdiction over an action where the decedent was the only named defendant to the action and counsel hired by the decedent's insurer actively litigated and defended against the action on the decedent's behalf. *Harris v. Jackson*, 192 S.W.3d 297, 303–04 (Ky. 2006). We wrote that the decedent's insurer, having the "duty to defend, and pay the defense's costs, as well as the right to settle as it 'consider[s] appropriate[,]'" was the real party in interest to the litigation and provided sufficient virtual representation." *Id.* at 304.

Regardless of the ease with which this Court might extend our holding in *Harris* to the case before us today, we cannot say that State Farm, an unnamed party to the litigation, provided virtual representation to the Estate, an entity that was nonexistent at the time, as to excuse Powers's failure to timely name

11

the Estate as a proper party. This Court's primary concern in employing the virtual representation doctrine in *Harris* was to obtain appellate jurisdiction over the decedent's estate to decide what it called "a matter of great import," the issue of whether an attorney for a deceased defendant owed a duty to disclose the death of his client to opposing counsel. *Id.* Today, this Court is not searching for jurisdiction, and we express serious misgivings at applying the virtual representation doctrine to defeat an expired statute of limitations.

Further, a preeminent consideration in applying the virtual representation doctrine has always been the "impracticability" of making all persons who might have remote interests in the litigation parties to the suit. Here, Powers faced no real obstacles to naming the Estate as a party to her suit. As proven by her eventual motions to appoint the Public Administrator as Administrator of the Estate and to substitute the Estate as a party defendant, the proper procedure to rectify her complaint was within Powers's reach all along. As we have previously stated, the onus of ascertaining the proper defendant to sue lies with the plaintiff. *Williams v. Hawkins*, 594 S.W.3d 189, 195 (Ky. 2020). Unlike the plaintiff in *Harris* who initially named the proper defendant and did not learn of his death until after the limitations period for revival had expired, Powers learned of Carruthers's death within the relevant limitations period, therefore giving her ample time to forcefully open the Estate and amend her complaint to name the Estate as the proper defendant. Thus, the matter before us is distinguishable from *Harris*.

12

For the aforementioned reasons, we cannot apply the virtual representation doctrine to save Powers's claim.

### d. Equitable Estoppel

Equitable estoppel "may arise to prevent a party from relying on a statute of limitations by virtue of a false representation or fraudulent concealment." *Hawkins*, 594 S.W.3d at 196 (Ky. 2020) (quoting *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992)). Reduced to its simplest elements, equitable estoppel "requires both a material misrepresentation by one party and reliance by the other party." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010). We need not delve into the intricacies of the doctrine, as there was clearly no material misrepresentation in this case.

Powers submits that Mr. Coltharp made a material misrepresentation in suggesting that Powers need not move the district court to appoint the Public Administrator and substitute the Estate as a party, because a potential settlement between Carruthers and Powers was imminent. She then argues that she relied on Mr. Coltharp's representations concerning the likelihood of settlement to her detriment in not seeking to amend her complaint. However, "[m]ere negotiations looking toward amicable settlement do not afford a basis for estoppel to plead limitations." *Gailor*, 990 S.W.2d at 603. At all times during the parties' negotiations toward settlement, Powers was aware of Carruthers's death and should have been aware that her claim against Carruthers, being null and void, had no settlement value. There is no evidence appearing in the record that Mr. Coltharp affirmatively misrepresented that Carruthers was still

13

alive, nor that he made an omission to the same effect. Rather, as we have previously stated, the record suggests it was Powers's counsel, Mr. Jones, that first informed Mr. Coltharp of Carruthers's death. Any further settlement negotiations concerning Powers's valueless claim cannot serve as a basis to estop the Estate from relying on its statute of limitations defense. There is no evidence of misrepresentation here.

### e. Additional Discovery

In response to KFB's Motion for Summary Judgment, Powers argued that she was entitled to additional discovery related to a tolling of the statute of limitations, equitable estoppel, and the virtual representation doctrine. She contends that additional discovery will produce further evidence of agreements, representations, and misrepresentations the Appellees made during the parties' shared settlement negotiations.

Summary judgment is only appropriate where there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 199 (Ky. 2001). "Although a defendant is permitted to move for a summary judgment at any time, this Court has cautioned trial courts not to take up these motions prematurely and to consider summary judgment motions 'only after the opposing party has been given ample opportunity to complete discovery.'" *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (quoting *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988)).

> Thus, even though an appellate court always reviews the
> substance of a trial court's summary judgment ruling de novo, i.e.,

14

> to determine whether the record reflects a genuine issue of material fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling.

*Id.*

Having reviewed the record, there certainly exists no issue of material fact regarding Powers's failure to timely amend her complaint to name the Estate as the proper party defendant to her negligence claim. Powers's attorney, Mr. Jones, submitted an affidavit appearing in the record summarizing his understanding of the parties' alleged tolling agreement, and his communications with Mr. Coltharp. It is evident that affidavit fails to create any issue of material fact itself, therefore, this Court is dubious that any further discovery of the parties' shared communications will yield any evidence of value to Powers's arguments. We cannot say that the trial court abused its discretion by ruling on KFB's Motion for Summary Judgment and denying Powers any further opportunities to scour the Appellees' records.

## II. Powers's attempt to amend her complaint to raise a new negligence per se claim was untimely.

In her response to the Estate's motion to remove the case from abeyance and KFB's motion for summary judgment, Powers also petitioned the circuit court for leave to amend her complaint and raise a new negligence per se claim against the Estate under KRS 446.070. The circuit court denied that motion.

Kentucky Rule of Civil Procedure (CR) 15 states that the trial court should freely give leave to amend a complaint "when justice so requires." CR 15.01. However, "the decision to grant or deny leave to amend is ultimately left

to the discretion of the trial court, which will not be disturbed absent an abuse of that discretion." *Nami Res. Co. v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 343 (Ky. 2018) (citing *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 869–70 (Ky. App. 2007)). "A trial court may deny the right to amend a pleading on the basis of 'the futility of the amendment itself,' which essentially equates to a failure to state a claim upon which relief could be granted." *Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 555 (Ky. App. 2016) (quoting *Bank One, Ky., N.A. v. Murphy*, 52 S.W.3d 540 (Ky. 2001) (Keller, J., concurring in part and dissenting in part)).

Pursuant to KRS 446.070, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This Court has interpreted KRS 446.070 as codifying the common law concept of negligence per se. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011). In consonance with the concept of negligence per se, the statute:

> creates a private right of action under which a damaged party may sue for a violation of a statutory standard of care, provided that three prerequisites are met: first, the statute in question must be penal in nature or provide no inclusive civil remedy; second, the party must be within the class of persons the statute is intended to protect; and third, the plaintiff's injury must be of the type that the statute was designed to prevent.

*Hickey v. Gen. Elec. Co.,* 539 S.W.3d 19, 23–24 (Ky. 2018) (quoting *Vanhook v. Somerset Health Facilities, LP*, 67 F.Supp.3d 810, 819 (E.D. Ky. 2014)) (alterations omitted).

16

Powers theorizes that Carruthers's conviction under KRS 189A.010, the criminal statute prohibiting operating a motor vehicle under the influence of alcohol or drugs, creates a theory of civil liability under which she may now sue for damages. She further asserts that any claim she might bring under KRS 446.070 is subject to the five-year statute of limitations specified in KRS 413.120(2) for "action[s] upon a liability created by statute, when no other time is fixed by the statute creating the liability." However, "[t]he five-year limitation period provided by KRS 413.120(2) for claims brought pursuant to a statute does not apply to claims based on a statutory provision that 'merely codifies common law liability and does not create a new theory of liability.'" *Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 73–74 (Ky. 2015) (quoting *Toche v. American Watercraft*, 176 S.W.3d 694, 698 (Ky. App. 2005)). That is because "a theory of liability cannot be regarded as having been 'created by statute' as stated in KRS 413.120(2) if it otherwise existed at common law prior to the enactment of the statute." *Id.* at 74. Rather, the proper statute of limitations for such claims is "the one that applies to the common law cause of action." *Id.*

Given that any negligence per se claim that Powers may assert arising out of Carruthers's violation of KRS 189A.010 would necessarily derive from her personal injuries, we cannot say that KRS 189A.010 imparts any new theory of liability distinct from "the traditional common law duty to avoid negligently or intentionally injuring another person." *Id.* at 76. In simpler terms, Powers could have brought her claim at common law even if KRS

189A.010 had never been enacted. Because Powers's attempted claim is essentially a common law personal injury claim arising out of a motor vehicle accident, the proper statute of limitations is the specific two-year statute of limitations prescribed in the MVRA. KRS 304.39-230(6). The MVRA's two-year statute of limitations preempts the general one-year statute of limitations for personal injury claims where those injuries "aris[e] from the ownership, maintenance, or use of a motor vehicle" and are not otherwise barred by the MVRA's no-fault provisions. KRS 413.140; KRS 304.39-060.

For these reasons we conclude that Powers's attempted negligence per se claim under KRS 446.070 would thus be untimely and futile, and the circuit court did not abuse its discretion in denying Powers's motion to amend her complaint.

### III. Powers's inability to recover from Carruthers or the Estate forecloses her underinsured motorist claim against KFB.

In addition to filing her negligence claim against Carruthers, Powers also asserted a UIM claim against her insurance carrier KFB. In its Motion for Summary Judgment, KFB argued that Powers could not succeed on her UIM claim as a matter of law because the parties' underinsurance agreement limits KFB's contractual liability only to those damages that Powers is "legally entitled to recover" from her tortfeasor. KFB argued that Powers is not "legally entitled to recover" any damages from the Estate on account of her mismanagement of the relevant statute of limitations. The trial court, in agreement with KFB, granted summary judgment.

18

The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)).

An underinsurance agreement between a carrier and its insured is of course a creature of contract, and "an insured's action against the UIM carrier is appropriately labeled a breach-of-contract action." *State Farm Mutual Auto. Ins. Co. v. Riggs*, 484 S.W.3d 724, 727 (Ky. 2016). In a standard underinsurance agreement, the UIM carrier agrees to "stand[] in the wrongdoer's shoes for purposes of paying damages" in excess of the wrongdoer's insurance policy limits. *Robertson v. Vinson*, 58 S.W.3d 432, 434 (Ky. 2001). The UIM carrier's liability to its insured "is measured by the liability of the tortfeasor and the amount of the tortfeasor's insurance or lack thereof." *Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311, 315 (Ky. 2006) (citing *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 902 (Ky. 1993)).

Relevant here, Powers's underinsurance agreement with KFB states that KFB:

Will pay compensatory damages which an insured is **legally entitled to recover** from the owner or operator of an underinsured motor vehicle because of bodily injury:

19

1. Sustained by an insured; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the underinsured motor vehicle.

(emphasis added). KFB contends that the policy language, limiting its liability only to those damages that Powers is "legally entitled to recover" from her tortfeasor, absolves it of any liability in this case because Powers did not file a timely claim against Carruthers or the Estate, and thus is not legally entitled to any damages. "As a general rule, the construction and legal effect of an insurance contract is a matter of law for the court." *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). Underinsurance agreements, however, are premised on the legislature's statutory requirement that carriers must offer UIM coverage to their insured. KRS 304.39-320(2) ("Every insurer shall make available, upon request, to its insureds underinsured motorist coverage . . . ."). Courts have been inclined to interpret underinsurance agreements between a carrier and an insured in the context of the statutory provisions requiring such coverage. 81 Am. Jur. *Trials* 425. This Court has before stated that "any term or condition in a UIM policy may not be inconsistent with the fundamental requirements of the statute." *Philadelphia Indem. Ins. Co. v. Morris*, 990 S.W.2d 621, 627 (Ky. 1999).

Specifically, the UIM statute requires that carriers offer UIM coverage whereby

20

> the insurance company agrees to pay its own insured for such **uncompensated damages** as he or she may recover on account of injury due to a motor vehicle accident because **the judgment recovered** against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

KRS 304.39-320(2) (emphasis added). Notably, the plain language of this portion of the statute would seem to suggest that a UIM carrier is liable only for damages exceeding the tortfeasor's policy limits when a judgment has first been secured against that tortfeasor. However, this Court, in *Coots v. Allstate Ins. Co.*, was tasked with interpreting an earlier version of the UIM statute and deciding whether an insured abrogated any further claims to UIM coverage by settling with his or her tortfeasor rather than securing a judgment against that tortfeasor. 853 S.W.2d at 900. We held that a judgment was not a necessary prerequisite to proceeding against one's UIM carrier, because the essential elements of the insured's underlying tort claim can be proven during the insured's contract claim against his or her UIM carrier. We wrote that, "proof the offending motorist is a tortfeasor and proof of the amount of damages caused by the offending motorist are not preconditions to coverage, but only essential facts that must be proved before the insured can recover judgment in a lawsuit against the insurer on the contract of insurance." *Id.* at 899. Our decision in *Coots*, endorsing the settlement of tort claims prior to claims for UIM coverage, was later codified and reflected in what is now KRS 304.39–320(3)(a):[1]

---

[1] The General Assembly amended KRS 304.39–320(3) during the 2024 legislative session, after the events giving rise to this litigation. However, those minor

21

> If an injured person or, in the case of death, the personal representative, **agrees to settle a claim** with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death **so as to create an underinsured motorist claim**, then written notice of the proposed settlement shall be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage.

This portion of the statute makes clear that a judgment in hand is not a necessary prerequisite to an insured's UIM claim against his or her carrier, but it does not illuminate the central question before this Court today: whether a plaintiff's inability to ever succeed in judgment or settlement against his or her tortfeasor forecloses any action for UIM coverage. As Powers points out, some of this Court's prior decisions seem to counsel that the plaintiff's ability to obtain a judgment against one's tortfeasor is immaterial to a later claim for UIM coverage.

In *U.S. Fid. & Guarantee Co. v. Preston,* a Kentucky citizen was killed in a motor vehicle accident involving an uninsured motorist (UM) in Georgia. 26 S.W.3d 145 (Ky. 2000). The decedent's estate brought a negligence suit against the tortfeasor in Georgia, and Georgia's comparative negligence scheme prohibited any recovery against the tortfeasor as a matter of law. *Id.* at 146. The estate then sought to declare its rights against the decedent's UM carrier.[2]

---

amendments appear only to have changed the organization of the statute, and the current version appears to be substantively the same as the prior version. For that reason, we use the current version of the statute in our analysis.

[2] There is no discernable difference between agreements for UM coverage or UIM coverage. *Coots,* 853 S.W.3d at 898 ("UIM coverage serves the same purpose and follows the same pattern as UM coverage. While the wording of the UIM statute is different from that of the UM statute, we can discern no fundamentally different insurance arrangement from that provided for under the UM statute.").

This Court held that the estate's inability to recover against the decedent's tortfeasor under Georgia law did not preclude a claim for UM coverage in Kentucky even when the parties' insurance agreement stated that the carrier was only liable for damages the decedent was "legally entitled to recover" from his tortfeasor. *Id.* at 147–48.

In *Nationwide Mutual Insurance Co. v. Hatfield*, a husband and wife were travelling in Missouri when they were involved in a motor vehicle accident with a fire truck owned by the City of Montgomery. 122 S.W.3d 36, 38 (Ky. 2003). The wife died as a result of the accident. *Id.* The driver of the fire truck was found to be responsible for damages, however, under Missouri law, the City enjoyed sovereign immunity from suit for damages exceeding its liability insurance for tort claims. *Id.* The husband and the wife's estate each collected $100,000 in damages from the City, and the husband later filed a UIM claim against the couple's insurance carrier for excess damages. *Id.* The parties' underinsurance agreement stated that the UIM carrier was only liable for those damages the insured was "due by law" from the tortfeasor. *Id.* at 38–39. A plurality of this Court, sitting in appellate review, held that the policy language and the plaintiff's inability to recover further damages from the tortfeasor as a matter of law were not a bar to the suit against the UIM carrier. *Id.* at 40.

Since rendering these opinions, however, this Court has strayed from their holdings, even going as far as to distinguish them completely, because in each instance the plaintiff's legal bar to recovery against his tortfeasor was the law of a foreign jurisdiction and not the law of this Commonwealth. *See*

23

*Slusher,* 325 S.W.3d at 324 ("In both *Preston* and *Hatfield* we interpreted a Kentucky insurance policy issued to a Kentucky resident as being consistent with Kentucky law, and we refused to subordinate Kentucky public policy to the conflicting public policy of another state."). Having considered the wisdom of these prior decisions once more, we feel no need to constrain ourselves by their holdings today. Rather, our own interpretation of the UIM statute leads us to conclude that where the plaintiff faces some legal bar to recovery against his tortfeasor, he cannot be said to be "legally entitled to recover" any damages from that tortfeasor, and cannot, therefore, succeed in a claim for UIM coverage against his insurance carrier. More specifically, a viable claim is a necessary prerequisite to UIM coverage.

As support for our holding, we need only look to the aforementioned portions of KRS 304.39–320 that predicate UIM coverage on a potential "judgment recovered against" the tortfeasor or "settlement" between the insured and tortfeasor. KRS 304.39–320(2)-(3). The existence of this language makes clear that irrespective of when a plaintiff brings his UIM claim, "UIM coverage applies only if the insured 'could recover a judgment against' the tortfeasor for the full amount of the insured's damages though the tortfeasor's liability insurance coverage is insufficient to pay the full amount of those damages." *Hatfield,* 122 S.W.3d at 53 (Cooper, J., dissenting). Equally, "a UIM carrier is 'liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured . . . . [I]f the underinsured tortfeasor could not be held liable for an item of damages, that

24

item is not "uncompensated damages" payable by the UIM carrier.'" *Jackson,* 595 S.W.3d at 128 (quoting *Samples,* 192 S.W.3d at 316). This holding is consistent with the overarching purpose of UIM coverage: "to place the insured in the same position he would have occupied had the tortfeasor been fully insured, not in a better position." *Samples,* 192 S.W.3d at 316 (citing *Robertson,* 58 S.W.3d at 434).

Applied here, Powers cannot succeed in her UIM claim against KFB because she does not have a legally viable claim against her tortfeasor. By failing to name the Estate as the proper defendant to her action within the statute of limitations period, Powers has foreclosed the possibility of ever succeeding in judgment or settlement against the Estate; she is not now, nor will she ever be, "legally entitled to recover" any amount of damages from the Estate. For that reason, her UIM claim against KFB must fail as a matter of law, and we affirm the trial court's entry of summary judgment in favor of KFB.

## CONCLUSION

For all reasons stated above, we affirm the Court of Appeals.

All sitting. All concur.

25

COUNSEL FOR APPELLANT:

Kevin C. Burke
Jamie K. Neal
Burke Neal PLLC

Daryl T. Dixon
Morgan & Morgan


COUNSEL FOR APPELLEE, KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY:

Michael Moore
Jake Carter
Moore Law Firm


COUNSEL FOR APPELLEE, ESTATE OF FENDOL CARRUTHERS, JR.:

James R. Coltharp, Jr.
Whitlow Roberts Houston & Straub, PLLC